The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware corporation, )
)
                  Plaintiff, )
)
    v. )
)
DANIEL POWERS, an individual, )
)
                  Defendant. )
)

No. 2:12-CV-1911

COPY OF MOTION FOR
TEMPORARY RESTRAINING
ORDER PENDING IN SUPERIOR
COURT AT TIME OF REMOVAL

Attached hereto as Exhibit A is a true copy of Amazon.com, Inc.'s Motion for

Temporary Restraining Order; Order to Show Cause Why Preliminary Injunction Should Not

Issue; and Order Permitting Expedited Discovery, filed in King County Superior Court, Cause

No. 12-2-34992-4 SEA, on October 26, 2012, prior to the removal of the action to this court on

October 29, 2012.

COPY OF MOTION FOR TRO PENDING IN
SUPERIOR COURT AT TIME OF RMEOVAL
(2:12-CV-1911) — 1
DWT 20581076v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206 622 3150 main  206 757 7700 fax

DATED this 30th day of October, 2012.

                          Davis Wright Tremaine LLP
                          Attorneys for Plaintiff


                          By s/Ladd B. Leavens
                              Ladd B. Leavens
                              WSBA #11501
                              Jonathan M. Lloyd
                              WSBA #37413
                              Suite 2200
                              1201 Third Avenue
                              Seattle, WA  98101-3045
                              Telephone: (206) 622-3150
                              Fax: (206) 757-7700
                              E-mail: laddleavens@dwt.com
                                      jonathanlloyd@dwt.com

COPY OF MOTION FOR TRO PENDING IN
SUPERIOR COURT AT TIME OF RMEOVAL
(2:12-CV-1911) — 2
DWT 20581076v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

PROOF OF SERVICE

I hereby certify that on the date below indicated, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following:

kpetrak@byrneskeller.com

DATED this 30th day of October, 2010.

Davis Wright Tremaine LLP
Attorneys for Plaintiff


By s/Ladd B. Leavens
    Ladd B. Leavens
    WSBA #11501
    Suite 2200
    1201 Third Avenue
    Seattle, Washington 98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: laddleavens@dwt.com

COPY OF MOTION FOR TRO PENDING IN
SUPERIOR COURT AT TIME OF RMEOVAL
(2:12-CV-1911) — 3
DWT 20581076v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206 622 3150 main   206 757 7700 fax

# EXHIBIT A

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

AMAZON.COM, INC.,                        )
                                         )   No. 12-2-34992-4 SEA
                    Plaintiff,           )
                                         )   MOTION FOR TEMPORARY
        v.                               )   RESTRAINING ORDER; ORDER
                                         )   TO SHOW CAUSE WHY
DANIEL A. POWERS,                        )   PRELIMINARY INJUNCTION
                                         )   SHOULD NOT ISSUE; AND
                    Defendant.           )   ORDER PERMITTING
                                         )   EXPEDITED DISCOVERY
                                         )

## I.   INTRODUCTION AND RELIEF REQUESTED

Amazon.com, Inc. ("Amazon") is a leader in the new but burgeoning cloud computing business. Google, Inc. is one of its principal competitors. Daniel A. Powers worked at Amazon from 2010 through June 2012 as Vice President of Sales for Amazon Web Services. He was responsible for managing global sales efforts and business development strategy for all Amazon cloud computing products and for almost all of Amazon's cloud computing customers. Perhaps more so than any other single Amazon employee, Powers was privy to extremely confidential, competitively sensitive information about Amazon's cloud computing business. He had little experience in the cloud computing industry when he joined Amazon from IBM. Amazon gave Powers access to detailed information about Amazon's current and long-term strategic roadmaps, existing and prospective customers and business partners, existing products and services and plans for future products and services, pricing, discount policies, margins, marketing strategies, financial performance, and technology.

Motion for Temporary Restraining Order, Etc. - 1
DWT 20489282v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1       To protect this confidential information and prevent its use by competitors, Amazon at

2   the outset required Powers to execute a Confidentiality, Noncompetition and Invention

3   Assignment Agreement ("Noncompetition Agreement").  In the Noncompetition Agreement,

4   Powers promised to abide by non-disclosure and limited noncompetition restrictions, broad

5   enough to protect Amazon's trade secrets, confidential information, and current and

6   prospective customer and business relationships, but narrow enough to give Powers ample

7   opportunity to find post-Amazon work, if necessary, in the area of technology product sales.

8   When Powers agreed to resign from Amazon effective July 1, 2012, he signed a severance

9   agreement.  In this agreement, Powers expressly reaffirmed his noncompetition and

10  nondisclosure obligations and Amazon agreed to (and did) give him $325,000 in severance pay.

11      Less than three months later, Powers went to work for Google as Google's "Director,

12  Cloud Platform Sales."  Powers' employment by Google in this position, or in any other

13  capacity supporting Google's cloud computing business, will necessarily involve direct and/or

14  indirect competition with Amazon for Amazon's existing or prospective customers, target

15  markets, and/or business partners, and will therefore breach the Noncompetition Agreement

16  and threaten—indeed, guarantee—that Powers will use Amazon's highly confidential

17  information to compete with Amazon, in clear violation of his Noncompetition Agreement.

18      Amazon asks this Court to (1) temporarily restrain Powers from working for Google in

19  a competitive cloud computing role, from soliciting Amazon's current and prospective cloud

20  computing customers, and from soliciting Amazon employees to join Google; (2) authorize

21  Amazon to take limited but expedited discovery from Powers and from Google; and (3) order

22  Powers to show cause, if any he has, why he should not be preliminarily restrained as set forth

23  above, pending trial.

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## II.   STATEMENT OF FACTS

**A.   Overview of Cloud Computing and Competition Between Amazon Web Services and Google Within the Cloud Computing Industry**

Amazon Web Services ("AWS"), a wholly owned subsidiary of Amazon, develops and sells cloud computing products and services. Amazon (like some other companies, particularly Google) has acquired a great deal of computing capacity, in the form of its computer server "farms," and a great deal of IT infrastructure expertise. These resources and skills enable AWS to offer information technology infrastructure services – essentially digital storage, computing capacity, and infrastructure expertise – to individuals and businesses. Cloud computing allows customers access to shared, flexible computing resources on an on-demand basis. Customers essentially "rent" the specific computing resources they need, when they need them, either in place of or in conjunction with their own existing computing infrastructure. By "renting" AWS cloud computing resources, Amazon customers can avoid or minimize their own capital costs and operating expenses associated with buying and maintaining hardware and software and setting up or expanding their own IT departments. Customers pay only for the computing resources they actually use. Cloud computing resources also offer flexibility; the Amazon-owned computing capacity can rapidly scale up when customers experience increased demand, such as a spike in website traffic. *See* Declaration of Adam Selipsky ("Selipsky Decl."), ¶ 4.

Amazon was a pioneer in this burgeoning new business, and is now the industry leader. It offers a suite of cloud service offerings through AWS that allow third parties to, among other things, develop and run software applications; easily and cheaply store digital information; set up and search databases; and seamlessly bridge between their own data centers and the AWS cloud. *See id.*, ¶ 5.

Google is a significant competitor of Amazon in the cloud computing industry and offers cloud products and services that directly compete with AWS products and services. Google markets and sells its cloud computing offerings to many of the same market sectors, segments, and groups targeted by Amazon. In particular, Google offers, or has announced its

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   intention to offer, several cloud computing products and services that directly compete with

2   Amazon's products, including Google App Engine, which competes directly with several

3   Amazon offerings, including Amazon Elastic Beanstalk Amazon Elastic Compute Cloud

4   ("Amazon EC2") and Amazon Simple Storage Service ("Amazon S3"); Google Cloud Storage,

5   which competes directly with Amazon S3; and Google Compute Engine, which competes

6   directly with Amazon EC2. *See id.*, ¶¶ 22-23. Numerous recent articles have described the

7   growing competition between Amazon and Google in the cloud computing industry. *See id.*, ¶

8   24 & Ex. D.

9        **B.    Powers' Background and Employment By Amazon**

10       Powers joined Amazon in 2010 as VP, AWS Sales. *Id.*, ¶ 7. He had worked at IBM for

11  the preceding 20 years. He held numerous sales and business development positions at IBM,

12  but had little experience with cloud computing. *Id.*, ¶ 6.

13       Recognizing that Powers needed to have access to trade secrets and confidential

14  information to do his job at Amazon, and that Amazon intended to pay him to develop

15  customer information and business strategies that would themselves be confidential,

16  Amazon required Powers to execute the Noncompetition Agreement as a condition of his

17  employment. Powers signed and dated the Noncompetition Agreement on August 24, 2010,

18  and returned it to Amazon. *See id.*, ¶ 8 & Ex. B. The Noncompetition Agreement prohibits

19  Powers from misusing or disclosing Amazon's Confidential Information during and at any time

20  after his employment with Amazon. The Noncompetition Agreement also contains certain

21  limited noncompetition restrictions that apply for 18 months after the termination of Powers'

22  employment. These noncompetition restrictions are designed to prevent a competitor from

23  using Amazon's competitively sensitive confidential information against it. In his current

24  employment with Google, Powers threatens to violate several of these restrictions:

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    *First*, Section 3(c)(ii) of the Noncompetition Agreement prohibits Powers from directly

2    or indirectly accepting or soliciting business from Amazon's current and prospective

3    customers, if the business is competitive products or services.

4         *Second*, Section 3(c)(iii) of the Noncompetition Agreement prohibits Powers from

5    directly or indirectly accepting or soliciting business from Amazon's existing or planned target

6    markets regarding competitive products or services.

7         *Third*, Section 3(c)(iv) of the Noncompetition Agreement prohibits Powers from

8    directly or indirectly entering into, or proposing to enter into, competitive business

9    arrangements with entities with which Amazon was involved in substantially the same business

10   arrangement, or had discussed entering into such an arrangement, prior to the termination of his

11   employment.

12        In addition, Section 3(b) of the Noncompetition Agreement prohibits Powers from

13   directly or indirectly hiring or attempting to hire Amazon employees for 12 months after the

14   termination of Powers' employment with Amazon. *Id.*, Ex. B.

15        Amazon emphasized in the Noncompetition Agreement (and Powers by signing it

16   acknowledged) that these restrictions could "seriously limit [Powers'] future flexibility in many

17   ways," and specified, as an example, that Section 3 "will make it impossible for [him] to seek

18   or accept certain opportunities for a period of 18 months after the Termination Date, despite the

19   fact that such opportunities might be highly attractive to [him] and provide greater

20   compensation than any other available opportunities . . . ." *Id.*  Powers acknowledged that the

21   restrictions in the Noncompetition Agreement were "reasonable in view of the nature of the

22   business in which [Amazon] is engaged, [Powers'] position with [Amazon], and [Powers']

23   knowledge of [Amazon's] business," and that his compensation (cash, equity, and otherwise)

24   reflected his agreement to the confidentiality and noncompetition provisions of the

25   Noncompetition Agreement. *Id.*

26

27

Motion for Temporary Restraining Order, Etc. - 5
DWT 20489282v5 0051461-000280

### C.    Powers' Access to Amazon's Confidential Information

As Vice President of Sales for AWS, Powers was responsible for developing, implementing and managing AWS sales and business development strategy for all products and all of its customers except governmental and education customers throughout the entire world. Powers was therefore privy to an extensive array of extremely confidential, competitively sensitive information about Amazon's cloud computing business. It would be hard to overstate the extent of Powers' exposure to and knowledge of Amazon's confidential information in this area.

*Customer Information.* Powers frequently met directly with Amazon's customers around the world. He knows the names of the individual customer contacts. He knows what Amazon cloud products and services each customer purchases, and what cloud products and services would be useful to the customer that the customer does not yet purchase (and, therefore, where new business opportunities lie with each customer). He knows the volume of Amazon's cloud business with each customer. He knows Amazon's margins on the products and services it sells to each customer. He knows which customers have expressed dissatisfaction with Amazon's cloud products and services, or with other aspects of the Amazon relationship, and he knows the reasons the customers have given for their dissatisfaction. He knows the identities of customers with whom Amazon is attempting to establish a business relationship. *See* Selipsky Decl., ¶¶ 9-12.

*Business Strategies.* Through Amazon's employment of him, Powers learned Amazon's cloud business strategies. Indeed, Amazon paid him to direct the development of many of those strategies. He knows how Amazon formulates prices for its cloud services and why it prices them as it does. He knows what new products Amazon intends to introduce, and where and when it intends to introduce them. He knows the kinds of customers to whom Amazon markets. He knows what kinds of customers and business products are most profitable. He knows the geographic areas in which Amazon does business, and he knows

1   Amazon's plans and timing for geographic expansion.  He knows what difficulties Amazon has

2   encountered in providing cloud services in various international areas, why it faces those

3   difficulties, and how a competitor might avoid them.  *See id.,* ¶ 13.

4         ***Financial Information.***  Powers had access to and knows all of the financial details of

5   Amazon's cloud business.  He knows total sales volume, and what kinds of customers and

6   products account for what percentages of the volume.  He knows Amazon's costs, its overall

7   margins, its product-by-product margins, and its customer-by-customer margins.  *See id.,* ¶ 14.

8         Powers acquired this information because Amazon employed and paid him to manage

9   the development of much of it, and included him in the highest levels of decision-making on

10   the cloud computing business.  He attended the AWS Weekly Business Metrics Meetings, at

11   which senior management discussed goals and metrics across all of AWS's products and

12   services.  He participated in AWS's semi-annual formal operations planning processes, OP1

13   and OP2, in which each operational segment within AWS makes detailed presentations about

14   their proposed plans, budget and strategy over a several year period.  Powers also had access to

15   extensive confidential information regarding customer activities through Amazon's confidential

16   and highly detailed customer relationship management database.  In addition, Powers received

17   several weekly e-mails containing highly confidential information, including the weekly

18   Amazon Web Services Metrics Deck, containing hundreds of pages worth of detailed business

19   statistics for AWS as a whole and for its individual products and services, as well as action

20   items, goals, current and future marketing plans, and the identities of Amazon's top customers

21   for each AWS product and service.  Powers also received weekly "Sync" emails (containing

22   confidential information specific to particular cloud computing products and services, or groups

23   of related products and services), and bi-weekly Geo Updates (from the various geographical

24   units in his sales organization).  *See id.,* ¶¶ 15-17.

25         Amazon takes significant steps to maintain the confidentiality of information about its

26   products, services, technology, and future plans.  These efforts include requiring all employees

27

Motion for Temporary Restraining Order, Etc. - 7
DWT 20489282v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   to sign confidentiality agreements, establishing internal procedures governing how confidential

2   information is handled, and restricting access to certain of its systems and facilities.  Much of

3   the information that Powers learned and was exposed to during his employment with Amazon

4   was treated as highly confidential and distributed on a limited basis within the company.  *See*

5   *id.*, ¶¶ 18-19.

6   **D.    Amazon's Confidential Information, Its Customers, and Its Competitive Business Position Are Threatened by Powers' Employment with Google.**

7   On June 5, 2012, Powers agreed to resign from his employment with Amazon, effective

8   July 1, 2012.  In connection with his termination, Powers executed a Confidential Severance

9   Agreement and Release (the "Severance Agreement"), in which he expressly reaffirmed his

10  confidentiality, non-competition and non-solicitation obligations.  Amazon in turn paid him

11  $325,000 in severance pay.  *See id.*, ¶¶ 20-21 & Ex. C.

12  Less than three months later, in late September, Powers went to work for Google, one of

13  Amazon's direct competitors in the cloud computing industry.  *See* Section A, *supra*;

14  Declaration of Zane Brown in Support of Motion for Temporary Restraining Order ("Brown

15  Decl."), ¶ 2.  Amazon contacted both Powers and Google to confirm the nature of Powers'

16  position and to inform both Powers and Google that Amazon viewed Google as a direct

17  competitor in the cloud computing industry, and that Powers' working at Google selling its

18  cloud computing products and services, or otherwise supporting its cloud computing business,

19  would be a violation of Powers' noncompetition obligations to Amazon under the

20  Noncompetition Agreement.  *See* Brown Decl., ¶¶ 2-4.  Powers' attorney (whom Google had

21  hired for Powers) gave Powers' title as "Director, Cloud Platform Sales."  *See id.*, ¶ 4.

22  Google's in-house counsel described Powers' new title as, vaguely, "Project Management

23  Director, Enterprise."  When questioned about Powers' inconsistent titles, Google characterized

24  the "Director, Cloud Platform Sales" title as an external title, and the "Project Management

25  Director, Enterprise" title as an internal title.  *See id.*, ¶ 5.  Google characterized Powers' duties

26  in this position as leading a team that sells and evangelizes Google's competitive products,

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   including Google App Engine, Google Cloud Storage, and Google Compute Engine, as well as

2   other "new" products. *See id.*

3         Regardless of his formal title, if Powers works in any position within or supporting

4   Google's cloud computing business, he will undoubtedly be responsible for expanding existing

5   customer relationships, developing new business, enhancement of existing products, new

6   product initiatives, and strategic business planning.  He will be utilizing all of the knowledge,

7   experience and information that Amazon provided to him – while paying him -- for the benefit

8   of Amazon's principal competitor.  He would necessarily be competing with Amazon's

9   respective cloud computing products and services and directly or indirectly marketing to

10  Amazon's.  Powers could not carry out those responsibilities without mis-using the significant

11  amount of confidential Amazon information he possesses, in violation of his obligations under

12  the Noncompetition Agreement and to Amazon's detriment.  In addition, Powers would not be

13  able to work for Google in any position within or supporting its cloud computing business

14  without directly or indirectly assisting Google in making sales to the same markets Amazon

15  targets. *See* Selipsky Decl., ¶ 26.

16        In an effort to avoid this litigation, Amazon and Google, through their in-house counsel,

17  have been engaged in discussions regarding whether and to what extent Powers' activities

18  would be restricted at Google.  Brown Decl., ¶ 6.  They have not reached any agreement.

19  Google has advised Amazon, however, that Google intends unilaterally to restrict Powers'

20  responsibilities to some extent, even in the absence of any agreement with Amazon.

21  Specifically, Google has advised Amazon that for a relatively brief period (until January 31,

22  2013), Google will assign Powers to work on a number of products that are not competitive

23  with Amazon products and exclude him from working on two of its competitive products,

24  Google Cloud Storage and Google Compute Engine.  In addition, Google has indicated that, for

25  a slightly longer period (through March 31, 2013), Powers will not solicit AWS customers with

26  whom he had direct contact or regarding whom he received confidential information in the

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

course of his employment with Amazon. *Id.*, ¶ 9. However, Google has advised Amazon that Powers will have immediate responsibility for business development and sales for Google App Engine, *id.*, ¶ 7, which is directly competitive with Amazon Web Services' Elastic Beanstalk, EC2, and S3. (All three of these Amazon products, and Google's Google App Engine, offer application developers the ability to write applications using cloud computing and storage, and offer developers and enterprises the ability to host operating applications, again using cloud computing and storage. Selipsky Decl., ¶¶ 27-31.) Notwithstanding Google's unilateral restrictions, therefore, Powers' duties at Google will require him – immediately – to directly or indirectly market competing Google products to Amazon's target market sectors, segments or groups, in violation of paragraph 3(c)(iii) of the Noncompetition Agreement, and in addition, unavoidably to use Amazon's confidential information for the benefit of Google, in violation of paragraph 2(b)(i) of the Noncompetition Agreement. A temporary restraining order and preliminary injunction are necessary and appropriate to prevent this misconduct from occurring. Without an injunction, Powers will be free to misuse Amazon's confidential information and trade secrets, solicit Amazon's cloud computing customers and employees, all in violation of his Noncompetition Agreement, and Amazon will suffer irreparable harm and substantial financial losses.

### III.   STATEMENT OF ISSUES

Is Amazon entitled to a Temporary Restraining Order, Order to Show Cause, Order Preserving Evidence, and an Order Allowing Expedited Discovery as requested above and as set forth in the attached proposed order?

### IV.   EVIDENCE RELIED UPON

The Declarations of Adam Selipsky and Zane Brown.

### V.   AUTHORITY AND ARGUMENT

Injunctive relief is necessary to stop Powers from breaching his noncompetition obligations to Amazon. Powers' work at Google will *necessarily* involve extensive direct and

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

indirect competition for Amazon customers, target markets, and business partners. Powers is

intimately familiar with Amazon's confidential information in areas of competition between the

companies, including in areas Google intends for him to work. Amazon is therefore entitled to

an order restraining Powers from further violations of his contractual and statutory duties

pursuant to CR 65.

Under Washington law,

> A party seeking relief through a temporary injunction must show
> a clear legal or equitable right, that there is a well-grounded fear
> of immediate invasion of right, and that the acts complained of
> have or will result in actual and substantial injury.

*Rabon v. Seattle*, 135 Wn.2d 278, 284 (1998); RCW 7.40.20. Injunctive relief is specifically

provided for in cases such as this where there is an "[a]ctual or threatened misappropriation" of

trade secrets. *See* RCW 19.108.020. All three elements are present here: (1) Amazon has a

right to enforcement of its Noncompetition Agreement with Powers and to protect its

confidential and trade secret information from competitors like Google; (2) these rights have

been invaded by Powers' employment with a competitor; and (3) without relief, Amazon will

continue to suffer irreparable harm as Powers and Google benefit from Powers' wrongful use

of Amazon's confidential information to assist Google in unfairly competing with Amazon's

cloud computing business, soliciting Amazon's customers and destroying Amazon's customer

relationships. Amazon is therefore entitled to an order granting the injunctive relief it seeks.

Even if Powers and Google insist that Powers will not disclose Amazon's confidential

information, the Noncompetition Agreement entitles Amazon to an additional level of

protection. Given the degree of competition between Amazon and Google, and Powers'

extensive knowledge of Amazon's confidential information, including information regarding

customers and future business plans, Amazon is entitled to greater protection than the vague

promises and practically unworkable "limitations" Powers and Google have offered. *See, e.g.,*

*Cabot Corp. v. King*, 790 F. Supp. 153, 156-58 (N.D. Ohio 1992) (recognizing that non-

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

competes are enforceable even if an employee insists he will not disclose confidential information; the point is to give a company the security of knowing that it does not have to rely on such assurances).

The balance of equities also favors enforcement.  From the outset Powers agreed to a non-compete and acknowledged that it would limit his ability to find later employment with an Amazon competitor.  Amazon employed and paid him only after he executed the Noncompetition Agreement.  He received substantial compensation from Amazon, including equity awards.  When he left Amazon, Powers reaffirmed his noncompetition and nondisclosure obligations in the Severance Agreement and accepted Amazon's offer of a $325,000 severance payment.  Amazon's willingness to make this severance payment was a function, in part, of Powers' reaffirmation of his noncompetition and nondisclosure obligations.  It would be inequitable to allow Powers the full benefit of signing the Noncompetition Agreement and the Severance Agreement, while denying Amazon the full benefit of the post-employment restrictions for which it bargained.

### A.   Amazon Has a Clear Legal and Equitable Right to Enjoin Powers' Breach of the Noncompetition Agreement.

Under Washington law, a non-competition agreement will be enforced if it is (1) reasonably necessary to protect the employer's business, including its confidential information, or goodwill, (2) does not impose on the employee any greater restraint than is reasonably necessary for that protection, and (3) is not contrary to the public interest.  *See, e.g., Perry v. Moran*, 109 Wn.2d 691, 698-701 (1987), *modified on other grounds*, 111 Wn.2d 885 (1989).  The restrictions the Noncompetition Agreement places on Powers are reasonable limitations and satisfy this standard.

In addition, the Washington Uniform Trade Secrets Act ("WUTSA") protects Amazon's trade secrets from the threat of Powers' misappropriation, including misappropriation through his use and disclosure of that information in the course of his

Motion for Temporary Restraining Order, Etc. - 12
DWT 20489282v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

employment with Google. *See* RCW 19.108 *et seq.* Amazon is entitled to injunctive relief to enforce this right. RCW 19.108.020.

Amazon therefore has a clear legal and equitable right to enforcement of the restrictions to which Powers agreed.

> 1. **The Restraint is Reasonably Necessary to Protect Amazon's Confidential Business Information.**

Amazon has a legitimate interest in protecting its confidential information and goodwill. *See Perry*, 109 Wn.2d at 702. It took Amazon years and significant resources to develop its cloud computing products and services, build its customer base, and develop relationships with its business partners. Amazon and Google compete to sell similar products and services to the same customers and target markets. *See* Selipsky Decl., ¶¶ 22-31. It is beyond dispute that Powers has a deep understanding of Amazon's underlying cloud computing products, services, technology, and strategic plans, and of its existing and prospective customers. *See id.*, ¶¶ 9-17.

Powers cannot simply unlearn the confidential information and trade secrets knowledge that he accumulated on a daily basis at Amazon. He will be unable to prevent himself from strategizing about Google's cloud computing products and services in light of what he knows about the same products and services at Amazon. He will know exactly where Amazon succeeded, where it stumbled, and where it intends to go in the future. He will know Amazon's prices and margins. He will know who its customers are, and which types of customers are most profitable. He will know which customers are dissatisfied with Amazon and why. He will know what product features the customers like. He will know Amazon's geographical expansion plans, and where Google should move to preempt them. Amazon's confidential information and trade secrets would be hugely valuable to Google. Amazon is contractually entitled to prevent Powers from handing over that asset, which he will do merely by working for Google in cloud computing.

Amazon required Powers to sign the Noncompetition Agreement precisely so that it could protect this information. *See id.*, ¶ 19. A non-compete allows an employer to share

1   confidential information with its employees without unwittingly handing it over to competitors.

2   *See Copier Specialists, Inc. v. Gillen*, 76 Wn. App. 771, 774 (1995).  The purpose of a non-

3   compete is to protect an employer's confidential information and goodwill without putting the

4   burden on the employer to prove actual misappropriation of confidential information – by

5   which time the damage may have been done.  A non-compete serves as an insurance policy

6   when there is risk that the employee could divert the employer's business, given his knowledge

7   of the employer's confidential information or relationships with the employer's customers.  *See*

8   *Nike, Inc. v. McCarthy*, 379 F.3d 576, 586 (9th Cir. 2004).

9          A non-compete is reasonably necessary to protect an employer's business where an

10  employee, through his work for the employer, acquires valuable information about the nature

11  and character of the employer's business and/or the identity and requirements of its customers.

12  *See Wood v. May*, 73 Wn.2d 307, 309-10 (1968); *see also Nike*, 379 F.3d at 585.  These exact

13  circumstances are presented here, due to the extensive knowledge of Amazon's cloud

14  computing business and its customers that Powers acquired while working at Amazon.  As part

15  of his job, Powers had direct and extensive access to, and was himself often involved in the

16  development and refinement of, AWS's marketing and pricing of cloud computing services,

17  and its strategic business plans, and its technology.  Powers has detailed knowledge of AWS's

18  existing and prospective customers, and relationships – developed during his employment at

19  Amazon – with key decision makers at those existing customers.  *See* Selipsky Decl., ¶¶ 10-12.

20  Powers himself acknowledged that the customer information and sales and business

21  development strategies that Amazon entrusted to him in the course of his employment

22  constitute confidential information.  *See id.*, Ex. B, § 2(a).  One of the fundamental—and

23  legitimate—purposes of noncompetition agreements is to protect from disclosure to

24  competitors the customer and client lists that the employer makes available to the employee

25  during the course of his or her employment.  See, e.g., *Perry v. Moran, supra,* 109 Wn.2d at

26  700; *Wood v. May, supra,* 73 Wn.2d at 310; *Knight Vale & Gregory  v. McDaniel,* 37 Wn. App.

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

366, 369-70 (1984); *see generally Racine v. Bender*, 141 Wash. 606 (1927).  In addition, the

courts of this state have recognized that customer lists, if not generally known to the public, are

trade secrets under the Uniform Trade Secrets Act, RCW 19.108.020.  *Ed Nowogroski Ins., Inc.*

*v. Rucker*, 137 Wn.2d 427, 440-42, 971 P.2d 936 (1999); *Thola v. Henschell*, 140 Wn.App. 70,

78, 164 P.3d 524 (2007).  A competitor with access to such information could easily adjust its

sales strategy to undercut Amazon's sales efforts and steal its customers.  The restrictions in the

Noncompetition Agreement are reasonably necessary to protect Amazon's confidential

information and trade secrets.

> **2.     The Restrictions Are No Greater Than Is Reasonably Necessary to Protect Amazon's Legitimate Business Interests.**

The covenants in Powers' Noncompetition Agreement place narrow restrictions on his

post-employment conduct.  They apply for only 18 months.  They limit post-employment

activities only with regard to companies offering substantially similar products or services in

areas of business competitive with Amazon.  *See* Selipsky Decl., Ex. B, § 3.  They bar him

from unfairly competing against Amazon with respect to customers, target markets, and

business partners with whom Amazon had existing (or was actively developing) relations at the

time he resigned.  These narrowly-drawn, time-limited prohibitions are critically necessary to

protect Amazon's legitimate business interest in its confidential customer and business strategy

information.  Washington courts routinely uphold covenants containing greater restrictions and

of longer duration than those presented here.  *See, e.g., Perry v. Moran,* 109 Wn.2d at 694-97;

*Knight, Vale & Gregory supra*, 109 Wn.2d at 369-71 (3-year non-compete reasonable); *Racine*

*v. Bender*, 141 Wash. at 610-15 (3-year non-compete "reasonably necessary to protect the

business or good will of the employer").  Similarly, courts recognize that global businesses that

compete globally may enforce global noncompetition agreements.  *See, e.g., Cole v. Champion*

*Enters., Inc.*, 305 Fed. Appx. 122, 130, 2008 WL 5427803, at *6 (4th Cir. 2008).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

3.     **The Noncompetition Agreement Imposes No Undue Hardship on the Public.**

The public will not be harmed by Powers' adherence to promises he made as a condition of his employment with Amazon.  The Noncompetition Agreement promotes fair competition by protecting Amazon's confidential information and goodwill from misuse, and allowing Google to compete freely with Amazon using its *own* confidential information. Moreover, with his skills and experience, Powers may contribute to the public good through a wide array of employers, or even with Google outside of the cloud computing arena; he simply cannot compete with Amazon in the cloud computing industry, where his knowledge and use of Amazon's confidential information and trade secrets would violate both the Noncompetition Agreement and the WUTSA.

B.     **Amazon Has a Reasonable Fear of a Violation.**

Amazon has a reasonable fear that Powers will breach his obligations under the Noncompetition Agreement and disclose or use its confidential information and trade secrets to compete with Amazon.  He is currently working for Google, a direct competitor of Amazon, in substantially the same position that he had held with Amazon, selling cloud computing products to customers worldwide.  Google has actively positioned its products and services to compete with Amazon's cloud computing products and services.  Google has released certain cloud computing products and services, has others in beta testing, and is expected to offer additional products and services later this year and next year.  Amazon and Google will be competing for the same customer base and in the same market segments.  *See* Selipsky Decl., ¶¶ 26-31.

Under these circumstances, Amazon has a reasonable fear that Powers is breaching and will continue to breach his obligations under the Noncompetition Agreement if he is not enjoined from continuing his work at Google.  *See King v. Riveland*, 125 Wn.2d 500, 517-518 (1994) (injunction upheld to prevent immediate breach of confidentiality agreement); *Hollis v. Garwall, Inc.* 137 Wn.2d 683, 699 (1999) (injunctive relief available based on well-grounded

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  fear of immediate breach of contract provisions); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69

2  (2nd Cir. 1999) (defendant's agreement to term providing for injunctive relief in event of breach

3  can be viewed as an admission that the employer will suffer irreparable harm were he to breach

4  the contract).

### C.   Powers' Breach Will Cause Amazon Actual and Substantial Injury

6  Powers' decision to join one of Amazon's direct competitors in the cloud computing

7  industry, shortly after leaving Amazon, in the same or similar areas that he worked at Amazon,

8  illustrates why his Noncompetition Agreement contains a limited non-compete and why a TRO

9  is necessary.  If Powers is not enjoined, the non-compete's essential purpose of protecting

10  Amazon's confidential information and goodwill will be frustrated.  *See Perry*, 109 Wn.2d at

11  701-702 (purpose of valid restraint is "to prevent competitive use, for a time, of information or

12  relationships which pertain peculiarly to the employer and which the employee acquired in the

13  course of the employment.").  Amazon would then have no effective remedy, as the harm

14  caused by Powers' breach will be immediate and hard to quantify.  *See Management, Inc. v.*

15  *Schassberger*, 39 Wn.2d 321, 328 (1951) ("the harm caused by the breach usually is incapable

16  of accurate estimation").  Absent a TRO, Powers will enjoy the full benefit of his bargain with

17  Amazon, while denying Amazon the benefits to which it is entitled under the Noncompetition

18  Agreement.  Such an inequitable result should be prevented via injunctive relief, as the parties

19  already agreed.  *See* Noncompetition Agreement § 6.

### VI.   THE COURT SHOULD ORDER EXPEDITED DISCOVERY.

21  Finally, Amazon asks that the Court permit discovery on an expedited basis.  Amazon

22  believes such an Order will benefit both parties by permitting them to prepare for the

23  Preliminary Injunction hearing on this matter.  Specifically, Amazon requests an order

24  requiring that Powers respond to the proposed written discovery, attached as **Exhibit A** hereto,

25  within five business days, that Amazon be permitted to take the deposition of Powers for no

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   more than seven hours, and that each party be permitted to take two additional depositions of

2   no more than seven hours each, on five days' notice.

3          The Superior Court rules specifically provide that a plaintiff may obtain leave of court

4   to take early discovery. *See* CR 30(a) (early depositions); CR 34(b) (early document

5   production). "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive

6   relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v.*

7   *United States*, 917 F. Supp. 841, 844 (D.D.C. 1996). *See also, Murray Publ. Co. v. Malmquist*,

8   66 Wn. App. 318, 323 (1992) (granting expedited discovery).

9                          **VII.    CONCLUSION**

10          For the foregoing reasons, Amazon respectfully requests entry of an Order in the form

11   presented herewith barring Powers until the preliminary injunction hearing from working in

12   any cloud computing role at Google, communicating with any Amazon cloud computing active

13   or prospective customer, or soliciting any current Amazon employee to join Google.  In

14   addition, Amazon requests that the Court grant it leave to take limited expedited discovery.

15          A proposed order is attached as Exhibit B.

16          DATED this 26th day of October, 2012.

17                          Davis Wright Tremaine LLP
                            Attorneys for Amazon.com, Inc.

18

19

20          By _____
                            Ladd B. Leavens, WSBA #11501
                            Jonathan M. Lloyd, WSBA #37413

21

22                          1201 Third Avenue, Suite 2200
                            Seattle, WA  98101-3045
23                          Telephone:  206-622-3150
                            Facsimile:  206-757-7700
24                          E-mail:  laddleavens@dwt.com
                            E-mail:  jonathanlloyd@dwt.com

25

26

27

Motion for Temporary Restraining Order, Etc. - 18
DWT 20489282v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

1

2

3

4

5

6

7         SUPERIOR COURT OF THE STATE OF WASHINGTON
                IN AND FOR KING COUNTY

8

9 AMAZON.COM, INC.,           )

                           )

10            Plaintiff,    )   No. 12-2-34992-4 SEA

                           )

11       v.               )   AMAZON'S FIRST WRITTEN
                           )   DISCOVERY TO DEFENDANT

12 DANIEL A. POWERS,      )   DANIEL A. POWERS

                           )

           Defendant.  )

13 _____)

14      This written discovery is propounded pursuant to the Civil Rules, and pursuant to the

15 Temporary Restraining Order, Order to Show Cause, and Order Granting Limited Expedited

16 Discovery entered in the captioned action.  Please produce the documents described herein for

17 inspection and copying at the offices of counsel for plaintiff, or at such other place as may be

18 agreed by counsel, not later than _____ days following service on counsel for defendant.

19      The word "documents" as used herein has the meaning given it in CR 34(a).

20      WRITTEN DISCOVERY NO. 1 (RFP):  Produce all documents that refer or relate to

21 your recruitment, hiring, employment, and anticipated and actual job responsibilities at Google,

22 Inc.

23      RESPONSE:

24

25

26

27

AMAZON'S FIRST WRITTEN DISCOVERY TO
DEFENDANT DANIEL A. POWERS- 1
DWT 20507959v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2      WRITTEN DISCOVERY NO. 2 (RFP):  Produce all documents (including but not

3  limited to documents constituting communications among any persons or entities), copies or

4  summaries of which, or information from which, you have provided to any agent or employee

5  of Google or any subsidiary thereof, and that you obtained in the course of or as the result of

6  your employment with Amazon.

7      RESPONSE:

8

9

10

11

12      WRITTEN DISCOVERY NO. 3(RFP):  Produce all documents that refer or relate to

13  Amazon's cloud computing business, including but not limited to all documents that you

14  acquired during or as a result of your employment at Amazon.

15      RESPONSE:

16

17

18

19

20      WRITTEN DISCOVERY NO. 4 (Interrogatory):  State your current residence address.

21      ANSWER:

22

23

24

25

26

27

AMAZON'S FIRST WRITTEN DISCOVERY TO
DEFENDANT DANIEL A. POWERS- 2
DWT 20507959v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax (206) 757-7700

DATED this _____ day of October, 2012.

> Davis Wright Tremaine LLP
> Attorneys for Plaintiff Amazon.com, Inc.

> By _____
> Ladd B. Leavens, WSBA #11501

ANSWERS dated this ___ day of _____, 2012.

> Attorneys for Defendants

> By _____
> _____

## VERIFICATION

Daniel A. Powers hereby declares:

I am the defendant in the above-entitled matter. I have read the foregoing answers and responses to Amazon's First Written Discovery to Defendant Daniel A. Powers, know the contents thereof, and verify that the answers and responses are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing declaration is true.

DATED this _____ day of _____, 2012.

> _____
> Daniel A. Powers

AMAZON'S FIRST WRITTEN DISCOVERY TO
DEFENDANT DANIEL A. POWERS- 3
DWT 20507959v1 0051461-000280

# EXHIBIT B

1
2
3
4
5
6
7        SUPERIOR COURT OF THE STATE OF WASHINGTON
                 IN AND FOR KING COUNTY
8
  AMAZON.COM, INC.,                    )
9                                      )
                        Plaintiff,     )    No. 12-2-34992-4 SEA
10                                     )
        v.                             )    [PROPOSED] TEMPORARY
11                                     )    RESTRAINING ORDER, ORDER
  DANIEL A. POWERS,                    )    TO SHOW CAUSE, AND ORDER
12                                     )    GRANTING LIMITED
                        Defendant.     )    EXPEDITED DISCOVERY
13  _____)

14        This matter came on for hearing before this Court on plaintiff Amazon.com, Inc.'s

15  Motion for Temporary Restraining Order, Order to Show Cause, and Order Granting Limited

16  Expedited Discovery (the "Motion").  The Defendant Daniel A. Powers ("Powers" or

17  "Defendant") or his attorneys received notice of the hearing on the Motion.

18        Having considered the Motion and all papers offered in support of and in opposition

19  thereto, including the Declaration of Adam Selipsky, the Declaration of Zane Brown, and

20  _____, and all exhibits attached thereto, and having

21  considered the arguments of counsel, it appears to the satisfaction of this Court that

22  Amazon.com, Inc. ("Amazon") has established a clear legal or equitable right and a

23  well-grounded fear of immediate invasion of that right, that the acts complained of either are

24  resulting or will result in actual and substantial injury to Amazon, and that the equities dictate

25  that a Temporary Restraining Order in the form requested should be entered.

26
27
[Proposed] Temporary Restraining Order,
Order to Show Cause, and Order Granting
Limited Expedited Discovery - 1
DWT 20507896v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Now, therefore, it is hereby ORDERED that pending a hearing on this Order to Show

2    Cause, including any period of extension of the hearing, Defendant Powers is hereby temporary

3    restrained and enjoined as follows:

4    1.    Defendant Powers is enjoined from engaging in any activity that directly or

5    indirectly supports any aspect of Google's cloud computing business, including, without

6    limitation, work related to Google App Engine, Google Cloud Storage and Google Compute

7    Engine.

8    2.    Defendant Powers and any person or entity acting in concert with him are

9    enjoined from disclosing or misappropriating for their own use or benefit, or for the use and

10   benefit of any other person or entity, any confidential or propriety information or trade secrets

11   of Amazon.com, Inc., or its subsidiaries (together "Amazon").  The phrase "confidential or

12   propriety information or trade secrets" includes all data and information in whatever form,

13   tangible or intangible, that is not generally known to the public and that relates to the business,

14   technology, practices, products, marketing, sales, services, finances, or legal affairs of Amazon,

15   including without limitation information about: (a) actual or prospective Amazon customers,

16   suppliers, and business partners; (b) Amazon business, sales, marketing, technical, financial,

17   and legal plans, proposals, and projections; and (c) Amazon concepts, techniques, processes,

18   methods, systems, designs, programs, code, formulas, research, experimental work, and work

19   in progress.

20   3.    Defendant Powers is enjoined to return to Amazon (or its counsel), by the close

21   of business on the second business day following the entry of this order, all property,

22   documents, files, reports, work product, and/or other materials that Defendant Powers has in his

23   possession, custody, or control that he obtained from Amazon or that constitute business

24   information or work product owned by Amazon.

25   IT IS FURTHER ORDERED that Amazon is entitled to take limited discovery on an

26   expedited basis.  Amazon may serve on counsel for Defendant Powers Amazon's First Written

27

[Proposed] Temporary Restraining Order,
Order to Show Cause, and Order Granting
Limited Expedited Discovery - 2
DWT 20507896v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  Discovery attached hereto as Exhibit A.  Defendant Powers and his counsel shall respond to

2  these discovery requests no later than _____, 2012.  In addition, Amazon may take up to

3  three (3) depositions, including the deposition of Defendant Powers, and depositions of Google

4  or its employees, upon three (3) days' notice as to Defendant Powers, and five (5) days' notice

5  as to Google or its employees, such depositions to occur prior to _____, 2012.

6       IT IS FURTHER ORDERED that as a condition of the enforceability of this Order,

7  Amazon shall post bond or cash security, in the amount of _____,

8  under CR 65(c), as security for the payment of such costs and damages as may be incurred by

9  Defendant Powers in the event Defendant Powers is found to have been wrongly enjoined or

10  restrained by this Order.

11       IT IS FURTHER ORDERED that the Defendant shall appear before this Court, the

12  Honorable _____ presiding, on the ___ day of _____, 2012, then and there

13  to show cause, if any he has, why a preliminary injunction, granting on a preliminary basis the

14  relief set forth above, should not be entered pending the trial of this action.

15       DATED this ____ day of _____, 2012.

16

17                      _____

18                      Judge/Court Commissioner

19

20  Presented by:

21

22  _____

23  Ladd B. Leavens
      WSBA #11501
24  Of Davis Wright Tremaine LLP
      Attorneys for Plaintiff Amazon.com, Inc.

25

26

27

[Proposed] Temporary Restraining Order,
Order to Show Cause, and Order Granting
Limited Expedited Discovery - 3
DWT 20507896v1 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700