1

2

3

4

5

6

7

8

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  AMAZON.COM, INC.,

10                          Plaintiff,

11          v.

12  DANIEL A. POWERS, an individual,

13                          Defendant.

14

15

No. 2:12-cv-01911-RAJ

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

NOTE ON MOTION
CALENDAR:  November 30, 2012

ORAL ARGUMENT
REQUESTED

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND RELIEF REQUESTED .................................................. 1

II.   STATEMENT OF FACTS ......................................................................... 2

    A.    Overview of Cloud Computing and Competition Between Amazon Web Services and Google Within the Cloud Computing Industry ......................................... 2

    B.    Powers' Background and Employment By Amazon ........................................ 4

    C.    Powers' Access to Amazon's Confidential Information ................................... 5

    D.    Amazon's Confidential Information, Its Customers, and Its Competitive Business Position Are Threatened by Powers' Employment with Google. .................................. 8

    E.    This Lawsuit and the Parties' Agreement Regarding Temporary Restrictions on Powers' Employment with Google ................................................................. 9

III.  ARGUMENT ......................................................................................... 10

    A.    Amazon Is Likely to Succeed on its Claims for Violation of the Noncompetition Agreement and Misappropriation of Trade Secrets ...................................... 12

        1.    The Restraint is Reasonably Necessary to Protect Amazon's Confidential Business Information ........................................................................ 13

        2.    The Restrictions Are No Greater Than Is Reasonably Necessary to Protect Amazon's Legitimate Business Interests. ............................................ 15

        3.    The Noncompetition Agreement Imposes No Undue Hardship on the Public. ......... 16

    B.    Amazon Will Suffer Irreparable Harm Without Injunctive Relief. ............................... 17

    C.    The Balance of Equities Tips in Favor of Amazon. ........................................ 19

    D.    The Public Interest Favors Granting Amazon's Request for Injunctive Relief. .............. 19

IV.   CONCLUSION ...................................................................................... 20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ........................................................................ 11

*Asbury MS Gray-Daniels, LLC v. Daniels,*
  812 F. Supp. 2d 771 (S.D. Miss. 2011) ........................................................... 20

*Aspect Software, Inc. v. Barnett,*
  787 F.Supp. 2d 118 (D. Mass. 2011) ......................................................... 16, 17

*Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, LLC,*
  636 F. Supp. 2d 1237 (D. Utah 2009) .............................................................. 20

*Basicomputer Corp. v. Scott,*
  973 F.2d 507 (6th Cir. 1992) .......................................................................... 18

*Bowe Bell & Howell Co. v. Harris,*
  145 Fed. Appx. 401, 2005 WL 1655030 (4th Cir. May 25, 2005) .................... 20

*Cabot Corp. v. King,*
  790 F. Supp. 153 (N.D. Ohio 1992) ................................................................ 16

*Cole v. Champion Enters., Inc.,*
  305 Fed. Appx. 122, 2008 WL 5427803 (4th Cir. 2008) ................................. 16

*Earthwise Tech., Inc. v. Comfort Living, LLC,*
  No. C09-5266BHS, 2009 WL 2466159 (W.D. Wash. Aug. 12, 2009) ............... 17

*FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd.,*
  730 F.2d 61 (2d Cir. 1984) ............................................................................. 18

*Gorman Pub. Co. v. Stillman,*
  516 F. Supp. 98 (N.D. Ill. 1980) ...................................................................... 13

*JAK Productions, Inc. v. Wiza,*
  986 F.2d 1080 (7th Cir. 1993) ........................................................................ 18

*Lands Council v. McNair,*
  537 F.3d 981 (9th Cir. 2008) (en banc) .......................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
  571 F.3d 873 (9th Cir. 2009) .......................................................................... 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Minnesota Mining and Mfg. Co. v. Francavilla,*
    191 F. Supp. 2d 270 (D. Conn. 2002) ................................................................ 16

*Nike, Inc. v. McCarthy,*
    379 F.3d 576 (9th Cir. 2004) .................................................................... 14, 19, 20

*Overholt Crop Ins. Serv. Co. v. Travis,*
    941 F.2d 1361 (8th Cir. 1991) ........................................................................... 17

*Prudential Ins. Co. v. Inlay,*
    728 F. Supp. 2d 1022 (N.D. Iowa 2010) ........................................................... 20

*Ticor Title Ins. Co. v. Cohen,*
    173 F.3d 63 (2d Cir. 1999) ................................................................................. 18

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................................................ 11

**STATE CASES**

*Copier Specialists, Inc. v. Gillen,*
    76 Wn. App. 771 (1995) ..................................................................................... 14

*Ed Nowogroski Ins., Inc. v. Rucker,*
    137 Wn.2d 427 (1999) ........................................................................................ 15

*Hollis v. Garwall, Inc.*
    137 Wn.2d 683 (1999) ........................................................................................ 18

*King v. Riveland,*
    125 Wn.2d 500 (1994) ........................................................................................ 18

*Knight Vale & Gregory v. McDaniel,*
    37 Wn. App. 366 (1984) ..................................................................................... 15

*Management, Inc. v. Schassberger,*
    39 Wn.2d 321 (1951) .......................................................................................... 19

*Perry v. Moran,*
    109 Wn.2d 691 (1987), *modified on other grounds,* 111 Wn.2d 885 (1989) .................. passim

*Racine v. Bender,*
    141 Wash. 606 (1927) ......................................................................................... 15

*Thola v. Henschell,*
    140 Wn.App. 70 (2007) ...................................................................................... 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Wood v. May,*
    73 Wn.2d 307 (1968).............................................................................................15

**STATE STATUTES**

RCW 19.108 *et seq.* ....................................................................................12, 5, 17

**RULES**

Fed. R. Civ. P 65(a) .......................................................................................11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.    INTRODUCTION AND RELIEF REQUESTED

Amazon.com, Inc. ("Amazon") is a leader in the new but burgeoning cloud computing business. Google, Inc. is one of its principal competitors. Daniel A. Powers worked at Amazon from 2010 through June 2012 as Vice President of Sales for Amazon Web Services. He was responsible for managing global sales efforts and business development strategy for all Amazon cloud computing products and for almost all of Amazon's cloud computing customers. Perhaps more so than any other single Amazon employee, Powers was privy to extremely confidential, competitively sensitive information about Amazon's cloud computing business. He had little experience in the cloud computing industry when he joined Amazon from IBM. Amazon gave Powers access to detailed information about Amazon's current and long-term strategic roadmaps, existing and prospective customers and business partners, existing products and services and plans for future products and services, pricing, discount policies, margins, marketing strategies, financial performance, and technology.

To protect this confidential information and prevent its use by competitors, Amazon at the outset required Powers to execute a Confidentiality, Noncompetition and Invention Assignment Agreement ("Noncompetition Agreement"). In the Noncompetition Agreement, Powers promised to abide by non-disclosure and limited noncompetition restrictions, broad enough to protect Amazon's trade secrets, confidential information, and current and prospective customer and business relationships, but narrow enough to give Powers ample opportunity to find post-Amazon work, if necessary, in the area of technology product sales. When Powers agreed to resign from Amazon effective July 1, 2012, he signed a severance agreement. In this agreement, Powers expressly reaffirmed his noncompetition and nondisclosure obligations and Amazon agreed to (and did) give him $325,000 in severance pay.

Less than three months later, Powers went to work for Google as Google's "Director, Cloud Platform Sales." Powers' employment by Google in this position, or in any other capacity supporting Google's cloud computing business, will necessarily involve direct and/or

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 1
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

indirect competition with Amazon for Amazon's existing or prospective customers, target markets, and/or business partners, and will therefore breach the Noncompetition Agreement. Amazon is entitled to enforce Powers' agreement that he would not accept employment with a competitor in the cloud computing business during the term of the Noncompetition Agreement, and Amazon is not obligated to rely on any assurances from Powers that he will avoid disclosing Amazon's highly confidential information in his new role at Google. Amazon therefore asks this Court to preliminarily enjoin Powers from working for Google in a competitive cloud computing role, from soliciting Amazon's current and prospective cloud computing customers, and from soliciting Amazon employees to join Google.

Since removing this lawsuit to federal court, Powers' counsel has provided assurances to Amazon's counsel that Powers and Google have imposed limitations preventing Powers (at least during negotiations regarding scheduling) from working on any Google products that compete with Amazon's cloud computing products (including Google App Engine), or soliciting any AWS customers or Amazon employees. Accordingly, Amazon has not attempted to note for hearing the TRO motion that was about to be argued when the case was removed. If, however, Powers and Google lift those limitations, or decline to confirm that the limitations will remain in place pending the hearing on this motion, Amazon will immediately proceed to file motion papers seeking entry of a temporary restraining order.

## II.    STATEMENT OF FACTS

### A.    Overview of Cloud Computing and Competition Between Amazon Web Services and Google Within the Cloud Computing Industry

Amazon Web Services ("AWS"), a wholly owned subsidiary of Amazon, develops and sells cloud computing products and services. Amazon (like some other companies, particularly Google) has acquired a great deal of computing capacity, in the form of its computer server "farms," and a great deal of IT infrastructure expertise. These resources and skills enable AWS to offer information technology infrastructure services – essentially digital storage, computing capacity, and infrastructure expertise – to individuals and businesses. Cloud computing allows

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 2
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    customers access to shared, flexible computing resources on an on-demand basis. Customers

2    essentially "rent" the specific computing resources they need, when they need them, either in

3    place of or in conjunction with their own existing computing infrastructure. By "renting" AWS

4    cloud computing resources, Amazon customers can avoid or minimize their own capital costs

5    and operating expenses associated with buying and maintaining hardware and software and

6    setting up or expanding their own IT departments. Customers pay only for the computing

7    resources they actually use. Cloud computing resources also offer flexibility; the Amazon-

8    owned computing capacity can rapidly scale up when customers experience increased demand,

9    such as a spike in website traffic. *See* Declaration of Adam Selipsky in Support of Motion for

10   Temporary Restraining Order ("Selipsky Decl.") [Dkt. 6], ¶ 4.

11           Amazon was a pioneer in this burgeoning new business, and is now the industry leader.

12   It offers a suite of cloud service offerings through AWS that allow third parties to, among other

13   things, develop and run software applications; easily and cheaply store digital information; set

14   up and search databases; and seamlessly bridge between their own data centers and the AWS

15   cloud. *See id.*, ¶ 5.

16           Google is a significant competitor of Amazon in the cloud computing industry and

17   offers cloud products and services that directly compete with AWS products and services.

18   Google markets and sells its cloud computing offerings to many of the same market sectors,

19   segments, and groups targeted by Amazon. In particular, Google offers, or has announced its

20   intention to offer, several cloud computing products and services that directly compete with

21   Amazon's products, including Google App Engine, which competes directly with several

22   Amazon offerings, including Amazon Elastic Beanstalk, Amazon Elastic Compute Cloud

23   ("Amazon EC2") and Amazon Simple Storage Service ("Amazon S3"); Google Cloud Storage,

24   which competes directly with Amazon S3; and Google Compute Engine, which competes

25   directly with Amazon EC2. *See id.*, ¶¶ 22-23. Numerous recent articles have described the

26

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 3
DWT 20585770v5 0051461-000280

1  growing competition between Amazon and Google in the cloud computing industry. *See id.*,
2  ¶ 24 & Ex. D.

3  **B.   Powers' Background and Employment By Amazon**

4  Powers joined Amazon in 2010 as VP, AWS Sales. *Id.,* ¶ 7. He had worked at IBM for
5  the preceding 20 years. He held numerous sales and business development positions at IBM,
6  but had little experience with cloud computing. *Id.,* ¶ 6.

7  Recognizing that Powers needed to have access to trade secrets and confidential
8  information to do his job at Amazon, and that Amazon intended to pay him to develop
9  customer information and business strategies that would themselves be confidential, Amazon
10 required Powers to execute the Noncompetition Agreement as a condition of his employment.
11 Powers signed and dated the Noncompetition Agreement on August 24, 2010, and returned it to
12 Amazon. See id., ¶ 8 & Ex. B. The Noncompetition Agreement prohibits Powers from
13 misusing or disclosing Amazon's Confidential Information during and at any time after his
14 employment with Amazon. The Noncompetition Agreement also contains certain limited
15 noncompetition restrictions that apply for 18 months after the termination of Powers'
16 employment. These noncompetition restrictions are designed to prevent a competitor from
17 using Amazon's competitively sensitive confidential information against it. In his current
18 employment with Google, Powers threatens to violate several of these restrictions:

19 *First*, Section 3(c)(ii) of the Noncompetition Agreement prohibits Powers from directly
20 or indirectly accepting or soliciting business from Amazon's current and prospective
21 customers, if the business is competitive products or services.

22 *Second*, Section 3(c)(iii) of the Noncompetition Agreement prohibits Powers from
23 directly or indirectly accepting or soliciting business from Amazon's existing or planned target
24 markets regarding competitive products or services.

25 *Third*, Section 3(c)(iv) of the Noncompetition Agreement prohibits Powers from
26 directly or indirectly entering into, or proposing to enter into, competitive business

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 4
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  arrangements with entities with which Amazon was involved in substantially the same business

2  arrangement, or had discussed entering into such an arrangement, prior to the termination of his

3  employment.

4      In addition, Section 3(b) of the Noncompetition Agreement prohibits Powers from

5  directly or indirectly hiring or attempting to hire Amazon employees for 12 months after the

6  termination of Powers' employment with Amazon. *Id.,* Ex. B.

7      Amazon emphasized in the Noncompetition Agreement (and Powers by signing it

8  acknowledged) that these restrictions could "seriously limit [Powers'] future flexibility in many

9  ways," and specified, as an example, that Section 3 "will make it impossible for [him] to seek

10 or accept certain opportunities for a period of 18 months after the Termination Date, despite the

11 fact that such opportunities might be highly attractive to [him] and provide greater

12 compensation than any other available opportunities . . . ." *Id.,* § 4(a). Powers acknowledged

13 that the restrictions in the Noncompetition Agreement were "reasonable in view of the nature of

14 the business in which [Amazon] is engaged, [Powers'] position with [Amazon], and [Powers']

15 knowledge of [Amazon's] business," and that his compensation (cash, equity, and otherwise)

16 reflected his agreement to the confidentiality and noncompetition provisions of the

17 Noncompetition Agreement. *Id.*

18      **C.    Powers' Access to Amazon's Confidential Information**

19      As Vice President of Sales for AWS, Powers was responsible for developing,

20 implementing and managing AWS sales and business development strategy for all products and

21 all of its customers except governmental and education customers throughout the entire world.

22 Powers was therefore privy to an extensive array of extremely confidential, competitively

23 sensitive information about Amazon's cloud computing business. It would be hard to overstate

24 the extent of Powers' exposure to and knowledge of Amazon's confidential information in this

25 area.

26

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 5
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

***Customer Information.*** Powers frequently met directly with Amazon's customers around the world. He knows the names of the individual customer contacts. He knows what Amazon cloud products and services each customer purchases, and what cloud products and services would be useful to the customer that the customer does not yet purchase (and, therefore, where new business opportunities lie with each customer). He knows the volume of Amazon's cloud business with each customer. He knows Amazon's margins on the products and services it sells to each customer. He knows which customers have expressed dissatisfaction with Amazon's cloud products and services, or with other aspects of the Amazon relationship, and he knows the reasons the customers have given for their dissatisfaction. He knows the identities of customers with whom Amazon is attempting to establish a business relationship. *See* Selipsky Decl., ¶¶ 9-12.

***Business Strategies.*** Through Amazon's employment of him, Powers learned Amazon's cloud business strategies. Indeed, Amazon paid him to direct the development of many of those strategies. He knows how Amazon formulates prices for its cloud services and why it prices them as it does. He knows what new products Amazon intends to introduce, and where and when it intends to introduce them. He knows the kinds of customers to whom Amazon markets. He knows what kinds of customers and business products are most profitable. He knows the geographic areas in which Amazon does business, and he knows Amazon's plans and timing for geographic expansion. He knows what difficulties Amazon has encountered in providing cloud services in various international areas, why it faces those difficulties, and how a competitor might avoid them. *See id.,* ¶ 13.

***Financial Information.*** Powers had access to and knows all of the financial details of Amazon's cloud business. He knows total sales volume, and what kinds of customers and products account for what percentages of the volume. He knows Amazon's costs, its overall margins, its product-by-product margins, and its customer-by-customer margins. *See id.,* ¶ 14.

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 6
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  Powers acquired this information because Amazon employed and paid him to manage
2  the development of much of it, and included him in the highest levels of decision-making on
3  the cloud computing business.  He attended the AWS Weekly Business Metrics Meetings, at
4  which senior management discussed goals and metrics across all of AWS's products and
5  services.  He participated in AWS's semi-annual formal operations planning processes, OP1
6  and OP2, in which each operational segment within AWS makes detailed presentations about
7  their proposed plans, budget and strategy over a several year period.  Powers also had access to
8  extensive confidential information regarding customer activities through Amazon's confidential
9  and highly detailed customer relationship management database.  In addition, Powers received
10 several weekly e-mails containing highly confidential information, including the weekly
11 Amazon Web Services Metrics Deck, containing hundreds of pages worth of detailed business
12 statistics for AWS as a whole and for its individual products and services, as well as action
13 items, goals, current and future marketing plans, and the identities of Amazon's top customers
14 for each AWS product and service.  Powers also received weekly "Sync" emails (containing
15 confidential information specific to particular cloud computing products and services, or groups
16 of related products and services), and bi-weekly Geo Updates (from the various geographical
17 units in his sales organization). *See id.,* ¶¶ 15-17.
18  Amazon takes significant steps to maintain the confidentiality of information about its
19 products, services, technology, and future plans.  These efforts include requiring all employees
20 to sign confidentiality agreements, establishing internal procedures governing how confidential
21 information is handled, and restricting access to certain of its systems and facilities.  Much of
22 the information that Powers learned and was exposed to during his employment with Amazon
23 was treated as highly confidential and distributed on a limited basis within the company. *See*
24 *id.,* ¶¶ 18-19.

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 7
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**D.    Amazon's Confidential Information, Its Customers, and Its Competitive Business Position Are Threatened by Powers' Employment with Google.**

On June 5, 2012, Powers agreed to resign from his employment with Amazon, effective July 1, 2012. In connection with his termination, Powers executed a Confidential Severance Agreement and Release (the "Severance Agreement"), in which he expressly reaffirmed his confidentiality, non-competition and non-solicitation obligations. Amazon in turn paid him $325,000 in severance pay. *See id.*, ¶¶ 20-21 & Ex. C.

Less than three months later, in late September, Powers went to work for Google, one of Amazon's direct competitors in the cloud computing industry. *See* Section A, *supra*; Declaration of Zane Brown in Support of Motion for Temporary Restraining Order ("Brown Decl.") [Dkt. 5], ¶ 2. Amazon contacted both Powers and Google to confirm the nature of Powers' position and to inform both Powers and Google that Amazon viewed Google as a direct competitor in the cloud computing industry, and that Powers' working at Google selling its cloud computing products and services, or otherwise supporting its cloud computing business, would be a violation of Powers' noncompetition obligations to Amazon under the Noncompetition Agreement. *See* Brown Decl., ¶¶ 2-4. Powers' attorney (whom Google had hired for Powers) gave Powers' title as "Director, Cloud Platform Sales." *See id.*, ¶ 4. Google's in-house counsel described Powers' new title as, vaguely, "Project Management Director, Enterprise." When questioned about Powers' inconsistent titles, Google characterized the "Director, Cloud Platform Sales" title as an external title, and the "Project Management Director, Enterprise" title as an internal title. *See id.*, ¶ 5. Google characterized Powers' duties in this position as leading a team that sells and evangelizes Google's competitive products, including Google App Engine, Google Cloud Storage, and Google Compute Engine, as well as other "new" products. *See id.*

Regardless of his formal title, if Powers works in any position within or supporting Google's cloud computing business, he will undoubtedly be responsible for expanding existing customer relationships, developing new business, enhancement of existing products, new

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 8
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

product initiatives, and strategic business planning. He will be utilizing all of the knowledge, experience and information that Amazon provided to him – while paying him – for the benefit of Amazon's principal competitor. He would necessarily be competing with Amazon's respective cloud computing products and services and directly or indirectly marketing to Amazon's. Powers could not carry out those responsibilities without misusing the significant amount of confidential Amazon information he possesses, in violation of his obligations under the Noncompetition Agreement and to Amazon's detriment. In addition, Powers would not be able to work for Google in any position within or supporting its cloud computing business without directly or indirectly assisting Google in making sales to the same markets Amazon targets. *See* Selipsky Decl., ¶ 26.

E.    **This Lawsuit and the Parties' Agreement Regarding Temporary Restrictions on Powers' Employment with Google**

Following their initial discussions regarding Powers' employment with Google, and in an effort to avoid this litigation, Amazon and Google, through their in-house counsel, engaged in discussions regarding whether and to what extent Powers' activities would be restricted at Google. Brown Decl., ¶ 6. When the parties reached an impasse in late October 2012, Google advised Amazon that it intended unilaterally to restrict Powers' responsibilities to some extent, even in the absence of any agreement with Amazon. Specifically, Google informed Amazon that for a relatively brief period (until January 31, 2013), Google would assign Powers to work on a number of products that are not competitive with Amazon products and exclude him from work on two of its competitive products, Google Cloud Storage and Google Compute Engine. In addition, Google indicated that, for a slightly longer period (through March 31, 2013), Powers would not solicit AWS customers with whom he had direct contact or regarding whom he received confidential information in the course of his employment with Amazon. *Id.*, ¶ 9. However, Google advised Amazon that Powers would have immediate responsibility for business development and sales for Google App Engine, *id.*, ¶ 7, which is directly competitive with Amazon Web Services' Elastic Beanstalk, EC2, and S3. (All three of these Amazon

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 9
DWT 20585770v5 0051461-000280

products, and Google's Google App Engine, offer application developers the ability to write applications using cloud computing and storage, and offer developers and enterprises the ability to host operating applications, again using cloud computing and storage. Selipsky Decl., ¶¶ 27-31.) Notwithstanding Google's unilateral restrictions, therefore, Powers' duties at Google would require him – immediately – to directly or indirectly market competing Google products to Amazon's target market sectors, segments or groups, in violation of paragraph 3(c)(iii) of the Noncompetition Agreement, and in addition, unavoidably to use Amazon's confidential information for the benefit of Google, in violation of paragraph 2(b)(i) of the Noncompetition Agreement.

Because Amazon and Google could not reach agreement concerning the responsibilities that Powers would assume in his new role at Google, Amazon filed suit in King County Superior Court on October 26, 2012 for breach of the Noncompetition Agreement and the Severance Agreement, breach of the implied covenant of good faith and fair dealing, and misappropriation of trade secrets. Amazon simultaneously filed a motion for a temporary restraining order to prevent Powers from working at Google in a cloud computing role.

On October 29, Powers removed the state court action to this Court based on diversity of citizenship. Powers' counsel has subsequently provided assurances that, at least pending scheduling negotiations, Powers will abide not only by the unilateral restrictions Google had previously described, but would also have no involvement with Google App Engine. Accordingly, Amazon has not noted the motion for temporary restraining order it filed along with its original Complaint, though it will immediately file a new TRO motion if it learns that Powers and Amazon are no longer enforcing or abiding by those limitations.

### III.    ARGUMENT

Injunctive relief is necessary to stop Powers from breaching his noncompetition obligations to Amazon. Powers' work at Google will necessarily involve extensive direct and indirect competition for Amazon customers, target markets, and business partners. Powers is

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 10
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

intimately familiar with Amazon's confidential information in areas of competition between the companies, including in areas Google intends for him to work. Amazon is therefore entitled to an order restraining Powers from further violations of his contractual and statutory duties pursuant to Federal Rule of Civil Procedure 65(a).

A plaintiff seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm without the preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *See Marlyn Nutraceuticals, Inc.* v. *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter* v. *Natural Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008)). Under the Ninth Circuit's "serious questions" sliding scale test for preliminary injunctions, these factors are balanced with each other, such that a strong showing of irreparable harm may overcome a lesser showing of likelihood of success, and likewise a strong showing on the merits justifies preserving the status quo even in cases with less substantial irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) ("we join the Seventh and the Second Circuits in concluding that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*. . . . 'A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'") (quoting from *Lands Council v. McNair,* 537 F.3d 981, 987 (9th Cir. 2008)(en banc).

Here, Amazon easily satisfies all four requirements: (1) Amazon is likely to succeed on the merits of its claims because it has a right to enforce its Noncompetition Agreement with Powers and to protect its confidential and trade secret information from competitors like Google, and these rights have been invaded by Powers' employment with a competitor; (2) Amazon will suffer irreparable harm from Powers' wrongful use of Amazon's confidential and trade secret information to assist Google in unfairly competing with Amazon's cloud

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 11
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

computing business, soliciting Amazon's customers and destroying Amazon's customer relationships; (3) the extensive and certain damage that Amazon will suffer from this unfair competition absent injunctive relief far outweighs any theoretical and temporary harm that Powers may suffer during the period of the Noncompetition Agreement; and (4) it is in the public interest for the Court to enforce the reasonable restrictions to which Powers agreed in the Noncompetition Agreement, which are designed to safeguard Amazon's confidential and trade secret information and to protect it against unfair competition by Powers and Google. The Court should therefore grant Amazon the injunctive relief it seeks.

### A.    Amazon Is Likely to Succeed on its Claims for Violation of the Noncompetition Agreement and Misappropriation of Trade Secrets.

Under Washington law, a non-competition agreement will be enforced if it is (1) reasonably necessary to protect the employer's business, including its confidential information, or goodwill, (2) does not impose on the employee any greater restraint than is reasonably necessary for that protection, and (3) is not contrary to the public interest. *See, e.g., Perry v. Moran*, 109 Wn.2d 691, 698-701 (1987), *modified on other grounds*, 111 Wn.2d 885 (1989). The restrictions the Noncompetition Agreement places on Powers are reasonable limitations and satisfy this standard.

In addition, the Washington Uniform Trade Secrets Act ("WUTSA") protects Amazon's trade secrets from the threat of Powers' misappropriation, including misappropriation through his use and disclosure of that information in the course of his employment with Google. *See* RCW 19.108 *et seq.* Pursuant to RCW 19.108.020, injunctive relief is specifically provided for in cases such as this where there is an "[a]ctual or threatened misappropriation" of trade secrets.

Amazon therefore has a clear legal and equitable right to enforcement of the restrictions to which Powers agreed, and is likely to succeed on the merits of its claims against Powers.

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 12
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1       **1.**     **The Restraint is Reasonably Necessary to Protect Amazon's**
2                  **Confidential Business Information.**

3       Amazon has a legitimate interest in protecting its confidential information and goodwill.

4 *See Perry*, 109 Wn.2d at 702. It took Amazon years and significant resources to develop its

5 cloud computing products and services, build its customer base, and develop relationships with

6 its business partners. Amazon and Google compete to sell similar products and services to the

7 same customers and target markets. *See* Selipsky Decl., ¶¶ 22-31. It is beyond dispute that

8 Powers has a deep understanding of Amazon's underlying cloud computing products, services,

9 technology, and strategic plans, and of its existing and prospective customers. *See id.*, ¶¶ 9-17.

10       Powers cannot simply unlearn the confidential information and trade secrets knowledge

11 that he accumulated on a daily basis at Amazon. He will be unable to prevent himself from

12 strategizing about Google's cloud computing products and services in light of what he knows

13 about the same products and services at Amazon. He knows exactly where Amazon succeeded,

14 where it stumbled, and where it intends to go in the future. He knows Amazon's prices and

15 margins. He knows who its customers are, and which types of customers are most profitable.

16 Heknows which customers are dissatisfied with Amazon and why. He knows what product

17 features the customers like. He knows Amazon's geographical expansion plans, and where

18 Google should move to preempt them. Amazon's confidential information and trade secrets

19 would be hugely valuable to Google. Amazon is contractually entitled to prevent Powers from

20 handing over that asset, which he will do merely by working for Google in cloud computing.

21 *See Perry*, 109 Wn.2d at 700-01; *Gorman Pub. Co.* v. *Stillman*, 516 F. Supp. 98, 104-06 (N.D.

22 Ill. 1980) (enforcing covenant not to compete with nationwide scope where employee had

23 "specialized knowledge" and an "intimate understanding of [employer's] business" which

24 would give new employer "an unjustified competitive advantage").

25       Amazon required Powers to sign the Noncompetition Agreement precisely so that it

26 could protect this information. *See id.*, ¶ 19. A non-compete allows an employer to share

27 confidential information with its employees without unwittingly handing it over to competitors.

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 13
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  *See Copier Specialists, Inc. v. Gillen*, 76 Wn. App. 771, 774 (1995). The purpose of a non-

2  compete is to protect an employer's confidential information and goodwill without putting the

3  burden on the employer to prove actual misappropriation of confidential information – by

4  which time the damage may have been done. A non-compete serves as an insurance policy

5  when there is risk that the employee could divert the employer's business, given his knowledge

6  of the employer's confidential information or relationships with the employer's customers. *See*

7  *Nike, Inc.* v. *McCarthy*, 379 F.3d 576, 586 (9th Cir. 2004) ("an employee's mere ability to take

8  advantage may be sufficient for equity to restrain the employee from engaging in a competing

9  business.").

10      A non-compete is reasonably necessary to protect an employer's business where an

11  employee, through his work for the employer, acquires valuable information about the nature

12  and character of the employer's business and/or the identity and requirements of its customers.

13  *See Wood v. May,* 73 Wn.2d 307, 309-10 (1968); *see also Nike*, 379 F.3d at 585 (granting

14  injunctive relief where employee "obtained knowledge of [employer's] launch dates, product

15  allocation strategies, new product development, product orders…and strategic plans"). These

16  exact circumstances are presented here, due to the extensive knowledge of Amazon's cloud

17  computing business and its customers that Powers acquired while working at Amazon. As part

18  of his job, Powers had direct and extensive access to, and was himself often involved in the

19  development and refinement of, AWS's marketing and pricing of cloud computing services,

20  and its strategic business plans, and its technology. Powers has detailed knowledge of AWS's

21  existing and prospective customers, and relationships – developed during his employment at

22  Amazon – with key decision makers at those existing customers. *See* Selipsky Decl., ¶¶ 10-12.

23  Powers himself acknowledged that the customer information and sales and business

24  development strategies that Amazon entrusted to him in the course of his employment

25  constitute confidential information. *See id.*, Ex. B, § 2(a). One of the fundamental—and

26  legitimate—purposes of noncompetition agreements is to protect from disclosure to

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 14
DWT 20585770v5 0051461-000280

competitors the customer and client lists that the employer makes available to the employee during the course of his or her employment. See, e.g., *Perry v. Moran, supra,* 109 Wn.2d at 700; *Wood v. May, supra,* 73 Wn.2d at 310; *Knight Vale & Gregory v. McDaniel,* 37 Wn. App. 366, 369-70 (1984); *see generally Racine v. Bender,* 141 Wash. 606 (1927). In addition, the courts of Washington State have recognized that customer lists, if not generally known to the public, are trade secrets under the Uniform Trade Secrets Act, RCW 19.108.020. *Ed Nowogroski Ins., Inc. v. Rucker,* 137 Wn.2d 427, 440-42 (1999); *Thola v. Henschell,* 140 Wn.App. 70, 78 (2007). A competitor with access to such information could easily adjust its sales strategy to undercut Amazon's sales efforts and steal its customers. The restrictions in the Noncompetition Agreement are reasonably necessary to protect Amazon's confidential information and trade secrets.

> ### 2. The Restrictions Are No Greater Than Is Reasonably Necessary to Protect Amazon's Legitimate Business Interests.

The covenants in Powers' Noncompetition Agreement place narrow restrictions on his post-employment conduct. They apply for only 18 months. They limit post-employment activities only with regard to companies offering substantially similar products or services in areas of business competitive with Amazon. *See* Selipsky Decl., Ex. B, § 3. They bar him from unfairly competing against Amazon with respect to customers, target markets, and business partners with whom Amazon had existing (or was actively developing) relations at the time he resigned. These narrowly-drawn, time-limited prohibitions are critically necessary to protect Amazon's legitimate business interest in its confidential customer and business strategy information. Washington courts routinely uphold covenants containing greater restrictions and of longer duration than those presented here. *See, e.g., Perry v. Moran,* 109 Wn.2d at 694-97; *Knight, Vale & Gregory supra,* 109 Wn.2d at 369-71 (3-year non-compete reasonable); *Racine v. Bender,* 141 Wash. at 610-15 (3-year non-compete "reasonably necessary to protect the business or good will of the employer"). Similarly, courts recognize that global businesses that

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    compete globally may enforce global noncompetition agreements. *See, e.g., Cole v. Champion*

2    *Enters., Inc.*, 305 Fed. Appx. 122, 130, 2008 WL 5427803, at *6 (4th Cir. 2008).

3         To the extent Powers and Google seek to challenge the restrictions in Powers'

4    Noncompetition Agreement as overbroad or unnecessary – presumably by pointing to their own

5    proposed limitations and insisting that Powers will not disclose Amazon's confidential

6    information in the course of his employment with Google – Amazon is entitled to enforcement

7    of the contractual protections it negotiated with Powers.  Given the degree of competition

8    between Amazon and Google, and Powers' extensive knowledge of Amazon's confidential

9    information, including information regarding customers and future business plans, Amazon is

10   entitled to greater assurance than the vague promises and practically unworkable "limitations"

11   Powers and Google have offered. *See* Brown Decl., ¶¶ 4-9; *Aspect Software, Inc.* v. *Barnett*,

12   787 F.Supp. 2d 118, 130 (D. Mass. 2011) (noting that "even sincere, scrupulous efforts by an

13   employee and his or her new employer to protect a prior employer's trade secrets are

14   insufficient to remove the threat of irreparable harm via disclosure of trade secrets");

15   *Minnesota Mining and Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002)

16   (enforcing non-compete and noting "[a]n employee… working in the same field on the same

17   product, even with the utmost good faith, cannot be expected to compartmentalize his

18   knowledge so his decisions and disclosures are not tainted by information he is prohibited from

19   using"); *Cabot Corp. v. King*, 790 F. Supp. 153, 156-58 (N.D. Ohio 1992) (recognizing that

20   non-competes are enforceable even if an employee insists he will not disclose confidential

21   information; the point is to give a company the security of knowing that it does not have to rely

22   on such assurances).

23         **3.    The Noncompetition Agreement Imposes No Undue Hardship on the
               Public.**

24         The public will not be harmed by Powers' adherence to promises he made as a

25   condition of his employment with Amazon.  The Noncompetition Agreement promotes fair

26   competition by protecting Amazon's confidential information and goodwill from misuse, and

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 16
DWT 20585770v5 0051461-000280

1   allowing Google to compete freely with Amazon using its *own* confidential information.

2   Moreover, with his skills and experience, Powers may contribute to the public good through a

3   wide array of employers, or even with Google outside of the cloud computing arena; he simply

4   cannot compete with Amazon in the cloud computing industry, where his knowledge and use of

5   Amazon's confidential information and trade secrets would violate both the Noncompetition

6   Agreement and the WUTSA.

**B.    Amazon Will Suffer Irreparable Harm Without Injunctive Relief.**

8   Power's employment with Google, one of Amazon's direct competitors in the cloud

9   computing industry, will irreparably harm Amazon. Powers' current position at Google is

10  substantially the same position that he previously held with Amazon: selling cloud computing

11  products to customers worldwide. Powers will not be able to work in that capacity without

12  breaching his obligations under the Noncompetition Agreement by disclosing or using

13  Amazon's confidential information and trade secrets to compete with Amazon. Google has

14  actively positioned its products and services to compete with Amazon's cloud computing

15  products and services. Google has released certain cloud computing products and services, has

16  others in beta testing, and is expected to offer additional products and services later this year

17  and next year. Amazon and Google will be competing for the same customer base and in the

18  same market segments. *See* Selipsky Decl., ¶¶ 26-31. Under these circumstances, Amazon

19  will suffer irreparable harm if Powers is not enjoined from continuing his work at Google on

20  products and services that compete with Amazon's cloud computing products and services.

21  "As a general rule, a breach of non-compete agreements tied to trade secrets concerns

22  triggers a finding of irreparable harm." *Aspect Software*, 787 F. Supp. 2d at 130; *see also*

23  *Earthwise Tech., Inc.* v. *Comfort Living, LLC*, No. C09-5266BHS, 2009 WL 2466159, at *8

24  (W.D. Wash. Aug. 12, 2009) ("Irreparable harm is presumed when a defendant engages in acts

25  prohibited by [RCW 19.108.020]"). This is so because the "loss of trade secrets cannot be

26  measured in money damages...A trade secret once lost is, of course, lost forever." *FMC Corp.*

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 17
DWT 20585770v5 0051461-000280

v. *Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984). For this reason, numerous federal and state courts have held that irreparable harm can be inferred or is presumed from an employee's breach of a non-competition covenant. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (defendant's agreement to term providing for injunctive relief in event of breach can be viewed as an admission that the employer will suffer irreparable harm were he to breach the contract); *JAK Productions, Inc.* v. *Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993) ("Whenever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate"); *Basicomputer Corp.* v. *Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer"); *Overholt Crop Ins. Serv. Co.* v. *Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (holding that irreparable harm can be inferred from breach of non-competition covenant); *see also King v. Riveland*, 125 Wn.2d 500, 517-518 (1994) (injunction upheld to prevent immediate breach of confidentiality agreement); *Hollis v. Garwall, Inc.* 137 Wn.2d 683, 699 (1999) (injunctive relief available based on well-grounded fear of immediate breach of contract provisions).

Powers' decision to join one of Amazon's direct competitors in the cloud computing industry, shortly after leaving Amazon, in the same or similar areas that he worked at Amazon, illustrates why his Noncompetition Agreement contains a limited non-compete and why a preliminary injunction is necessary. If Powers is not enjoined, the non-compete's essential purpose of protecting Amazon's confidential information and goodwill will be frustrated. *See Perry*, 109 Wn.2d at 701-702 (purpose of valid restraint is "to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment."). Amazon would then have no effective remedy, as the harm caused by Powers' breach will be immediate and hard to quantify, as Powers himself acknowledged in the Noncompetition Agreement. *See* Selipsky Decl., Ex. B,

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 18
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   § 6 ("[Powers] acknowledges that any breach of this Agreement may cause [Amazon]

2   irreparable harm for which there is no adequate remedy at law"); *Management, Inc. v.*

3   *Schassberger*, 39 Wn.2d 321, 328 (1951) ("the harm caused by the breach usually is incapable

4   of accurate estimation").  Absent injunctive relief, Powers will enjoy the full benefit of his

5   bargain with Amazon, while denying Amazon the benefits to which it is entitled under the

6   Noncompetition Agreement.  The Court should grant Amazon the injunctive relief it seeks to

7   prevent this inequitable result.

8   **C.      The Balance of Equities Tips in Favor of Amazon.**

9          The balance of equities also favors granting Amazon the injunctive relief it seeks.  From

10   the outset, Powers agreed to a non-compete and acknowledged that it would limit his ability to

11   find later employment with an Amazon competitor.  *See* Selipsky Decl., Ex. B, §§ 3, 4(a).

12   Amazon employed and paid him only after he executed the Noncompetition Agreement.  He

13   received substantial compensation from Amazon, including equity awards.  *Id.*, ¶¶ 7-8 & Exs. A-

14   B.  When he left Amazon, Powers reaffirmed his noncompetition and nondisclosure obligations

15   in the Severance Agreement and accepted Amazon's offer of a $325,000 severance payment.

16   *Id.*, ¶¶ 20-21 & Ex. C.  Amazon's willingness to make this severance payment was a function, in

17   part, of Powers' reaffirmation of his noncompetition and nondisclosure obligations.  It would be

18   inequitable to allow Powers the full benefit of signing the Noncompetition Agreement and the

19   Severance Agreement, while denying Amazon the full benefit of the post-employment

20   restrictions for which it bargained.  *See Nike*, 379 F.3d at 587 (granting injunction because "the

21   potential disruption to [plaintiff's] sales and products outweighs any harm that the injunction

22   would cause [defendant] in the intermediate or long term" from having "to sit out" during the

23   term of the injunction).

24   **D.      The Public Interest Favors Granting Amazon's Request for Injunctive
              Relief.**

25          The public's interest in fair competition and protecting legitimate business interests

26   favors granting Amazon the injunctive relief it seeks here.  The Noncompetition Agreement

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 19
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

promotes fair competition by protecting Amazon's confidential information and goodwill from misuse, while allowing Google to compete freely with Amazon using its **own** confidential information.  In similar circumstances, courts have not hesitated to enforce non-competition agreements and to enjoin parties from violating such agreements. *See Nike*, 379 F.3d at 586-87 (granting injunction where Nike executive violated non-compete agreement by accepting employment with Reebok); *Bowe Bell & Howell Co.* v. *Harris*, 145 Fed. Appx. 401, 2005 WL 1655030, at *3 (4th Cir. May 25, 2005) (affirming district court's decision that "the public has an interest in enforcing restrictive covenants that protect business interests"); *Prudential Ins. Co.* v. *Inlay*, 728 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010) ("[T]he public interest calls for enforcement of valid non-competition agreements"); *Asbury MS Gray-Daniels, LLC* v. *Daniels*, 812 F. Supp. 2d 771, 783 (S.D. Miss. 2011) (granting preliminary injunction because the "public has an interest in ensuring that parties uphold valid contractual agreements entered into voluntarily and knowingly"); *see also Bad Ass Coffee Co. of Hawaii, Inc.* v. *JH Nterprises, LLC,* 636 F. Supp. 2d 1237, 1252 (D. Utah 2009) (where defendants breached non-compete their "harms [are] self-inflicted and are not properly considered as harms to the 'public interest.'").

## IV.    CONCLUSION

For the foregoing reasons, Amazon respectfully requests entry of an Order in the form presented herewith, barring Powers until trial in this action from working in any cloud computing role at Google, communicating with any Amazon cloud computing active or prospective customer, or soliciting any current Amazon employee to join Google.

A proposed order is filed herewith.

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 20
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DATED this 6th day of November, 2012.

Davis Wright Tremaine LLP
Attorneys for Amazon.com, Inc.


By /s/ Ladd B. Leavens
    Ladd B. Leavens, WSBA #11501
    Jonathan M. Lloyd, WSBA #37413

    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone:  206-622-3150
    Facsimile:  206-757-7700
    E-mail:  laddleavens@dwt.com
    E-mail:  jonathanlloyd@dwt.com

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 21
DWT 20585770v5 0051461-000280

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this day, I electronically filed the foregoing document with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4

those attorneys of record registered on the CM/ECF system.  All other parties shall be served in

5

accordance with the Federal Rules of Civil Procedure.

6

DATED this 6th day of November, 2012.

7

8

/s/ Ladd B. Leavens
Ladd B. Leavens, WSBA #11501

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR PRELIMINARY INJUNCTION
(2:12-cv-01911-RAJ) - 22
DWT 20585770v5 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700