The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., | No. 2:12-cv-01911-RAJ |
| Plaintiff, | |
| v. | PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION |
| DANIEL A. POWERS, an individual, | |
| Defendant. | NOTE ON MOTION CALENDAR: November 30, 2012 |
| | ORAL ARGUMENT REQUESTED |

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ)

DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ADDITIONAL FACTUAL BACKGROUND ................................................................... 1

III. ARGUMENT ...................................................................................................................... 2

    A. Amazon Is Likely to Succeed on its Breach of Contract Claim. ................................. 2

        1. The Noncompetition Agreement Restricts Powers from Competing with Amazon's Cloud Computing Business. ............................................................. 3

        2. The Restrictions Amazon Seeks are Reasonable Limitations that Would Impose Necessary Restraints on Powers. ........................................................... 5

        3. Washington, Not California, Law Controls. ...................................................... 8

    B. Amazon is Likely to Succeed on Its Trade Secret Claim. ............................................ 9

    C. Amazon Has Demonstrated a Likelihood of Irreparable Harm. ................................. 10

    D. The Balance of Equities and Public Interest Tip in Favor of Amazon. ..................... 12

IV. CONCLUSION ................................................................................................................ 12

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - i
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A Place for Mom, Inc. v. Leonhardt*,
  No. C06-457P, 2006 WL 226337 (W.D. Wash. Aug. 4, 2006) .................................................. 6

*Beckman Instruments, Inc. v. Cincom Sys., Inc.*,
  165 F.3d 914, 1998 WL 783774 (9th Cir. Nov. 10, 1998) ....................................................... 12

*Calence, LLC v. Dimension Data Holdings, PLC*,
  222 Fed. App'x 563 (2007) ...................................................................................................... 11

*CH2O, Inc. v. Bernier*,
  No. C11-5153RJB, 2011 WL 1485604 (W.D. Wash. Apr. 18, 2011) .................................. 8, 9

*eBay Inc. v. MercExchange LLC*,
  547 U.S. 388 (2006) ................................................................................................................. 11

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
  654 F.3d 989 (9th Cir. 2011) ................................................................................................... 11

*Harlan Labs, Inc. v. Campbell,*
  --- F. Supp. 2d ---, 2012 WL 5285127 (D. Mass. Oct. 25, 2012) .............................................. 3

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................................... 9

*Minn. Mining & Mfg. Co. v. Francavilla,*
  191 F. Supp. 2d 270 (D. Conn. 2002) ....................................................................................... 3

*Mirina Corp. v. Marina Biotech*,
  770 F. Supp. 2d 1153 (W.D. Wash. 2011) .............................................................................. 11

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
  737 F. Supp. 2d 1257 (E.D. Wash. 2010) ............................................................................... 10

*Oce N.A., Inc. v. Brazeau*,
  No. 09 C 2381, 2010 WL 5033310 (N.D. Ill. Mar. 18, 2010) ................................................... 3

*Pac. Aerospace & Elecs., Inc. v. Taylor*,
  295 F. Supp. 2d 1188 (E.D. Wash. 2003) ............................................................................... 10

*Peru v. Sharpshooter Spectrum Venture LLC*,
  493 F.3d 1058 (9th Cir. 2007) ................................................................................................... 4

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - ii
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Stoncor Grp., Inc. v. Campton*,
  No. C05-1225JLR, 2005 WL 2030832 (W.D. Wash. Aug. 22, 2005) ................................ 10

*Swenson v. T-Mobile USA, Inc.*,
  415 F. Supp. 2d 1101 (S.D. Cal. 2006) .............................................................................. 8

*U.S. v. BNS, Inc.*,
  858 F.2d 456 (9th Cir. 1988) ............................................................................................ 12

*U.S. Water Servs., Inc. v. Itoh*,
  No. C11-5144BHS, 2011 WL 834167 (W.D. Wash. Mar. 3, 2011) ................................ 12

*Winter* v. *Natural Res. Def. Council*,
  555 U.S. 7 (2008) ............................................................................................................. 11

**STATE CASES**

*Application Group, Inc.* v. *Hunter Group, Inc.*,
  61 Cal. App. 4th 881, 72 Cal. Rptr. 2d 73 (1998) .............................................................. 9

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*,
  124 Wn.2d 816 (1994) ....................................................................................................... 8

*Brittingham Leasing Corp. v. Szymanski*,
  53 Wn. App. 251 (1989) .................................................................................................... 4

*Center v. Wright*,
  No. 94-2-03449-2, 1997 WL 273636 (Wn. App. May 23, 1997) ...................................... 4

*Dixie Bearings, Inc.* v. *Walker*,
  219 Ga. 353, 133 S.E.2d 338 (1963) ................................................................................. 6

*Ekman* v. *United Film Serv., Inc.*,
  53 Wn.2d 652 (1959) ......................................................................................................... 6

*Ed Nowogroski Ins., Inc. v. Rucker*,
  137 Wn.2d 427 (1999) ..................................................................................................... 10

*Erwin v. Cotter Health Ctrs.*,
  161 Wn.2d 676 (2007) ....................................................................................................... 8

*Federated Mut. Ins. Co.* v. *Whitaker*,
  232 Ga. 811, 209 S.E.2d 161 (1974) ................................................................................. 6

*Howard Schultz & Assocs. of SE, Inc.* v. *Broniec*,
  239 Ga. 181, 236 S.E.2d 265 (1977) ................................................................................. 6

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - iii
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Knight, Vale & Gregory v. McDaniel*,
   37 Wn. App. 366 (1984) ................................................................................................ 5, 6, 7

*Perry v. Moran*,
   109 Wn.2d 691 (1987) ......................................................................................................6, 7

*Solutec Corp., Inc.* v. *Agnew*,
   No. 16105-6-III, 1997 WL 794496 (Wn. App. Dec. 30, 1997) ........................................ 3, 10

*Wood v. May*,
   73 Wn.2d 307 (1968) ............................................................................................................7

**STATUTES**

RCW 19.108 *et seq.* ...................................................................................................................10

**RULES**

Federal Rule of Civil Procedure 65 ..............................................................................................2

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) CONFLICT OF LAWS § 187 ........................................................................8

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - iv
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I. INTRODUCTION

Amazon files this reply memorandum in support of its Motion for Preliminary Injunction.

## II. ADDITIONAL FACTUAL BACKGROUND

Mr. Powers in his Opposition and the supporting declarations takes substantial liberties with the facts. Powers states that when he was first asked to sign the Noncompetition Agreement, he did not do so because he was concerned about the restrictions on which Amazon now relies, and that he "ultimately" signed it because he concluded it did not encompass his field of work, and because Amazon refused to give him his first paycheck if he did not sign it. Powers Decl. ¶ 12. In fact, he signed the agreement ***immediately*** upon being asked to do so, just two days after the date of the letter by which it was sent to him, and long before he actually started work at the company. Decl. of Adam Selipsky ISO Reply ("Selipsky Reply Decl."), ¶ 3 & Ex. B. Powers now carefully calls the agreement a "form nondisclosure agreement" or "NDA," *see* Powers Decl. ¶ 12 and *passim*, and claims that he always believed that it did not prohibit him from competing with Amazon in the cloud industry. In his emails during his out-processing, however, Powers himself called it a "non-compete." Declaration of John Hunthausen, Ex. A. His claims that he had "particular familiarity or involvement" with only 33 Amazon customers, Powers Decl. ¶ 21, and that his customer interactions were "limited, almost entirely, to larger fortune 2000 customers [and]…larger deals and opportunities," *id.* ¶ 13, are highly implausible, in light of his heavy travel schedule for 18 months and his statement in his self-evaluation that he "[s]pent a lot of time with customers in geographies in 2011, large enterprise, mid-sized, and startups . . ." Selipsky Reply Decl. ¶ 4 & Ex. C. He now opportunistically claims to have had extensive cloud experience at IBM, but he does so in direct contradiction to his statements to Amazon at the time of hire about his three months of cloud experience. Brown Reply Decl. ¶ 2; Decl. of Susan Harker, ¶ 2. In fact, the word "cloud" did not appear on his resume when he applied. Selipsky Reply Decl. ¶ 2, & Ex. A.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 1
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Against this background, Powers asks the Court and Amazon to accept his assurances that he will not use Amazon's confidential information while performing, at Google, the same functions that he was asked to perform at Amazon. The Noncompetition Agreement relieves Amazon from having to rely on such assurances. This Court should enforce it *pendente lite*.

### III.   ARGUMENT

In his Opposition, Powers argues that the Court "may not grant [a preliminary injunction]...absent discovery and an evidentiary hearing." Opp. at 10. Federal Rule of Civil Procedure 65 contains no such requirement, and Powers offers no authority in support of his suggestion. Amazon attempted to negotiate equitable expedited discovery with Powers and Google before filing this motion, and was unable to do so. Declaration of Ladd B. Leavens ISO Reply ("Leavens Decl."), ¶¶ 2-12. Powers has made no further attempt to discuss a reasonable plan, or any plan, for expedited discovery. *See id.*

**A.   Amazon Is Likely to Succeed on its Breach of Contract Claim.**

In his Opposition, Powers relies on an exceedingly narrow reading of the restrictions in the Noncompetition Agreement to argue that Amazon has no contractual basis to prevent him from working for Google's cloud computing business in direct competition with Amazon's cloud computing business. Opp. at 12-13. At the same time, he characterizes the same restrictions as "obscenely overbroad," arguing that they are for that reason unenforceable. Opp. at 14-18. Neither of these contradictory arguments finds support in the language of the Noncompetition Agreement or in the authority Powers cites. The restrictions that Amazon seeks to enforce here are reasonable, targeted restrictions on competitive work, like those that courts in Washington and the Ninth Circuit have recognized and upheld for decades.[1]

---

[1] Powers also suggests that Amazon's request for injunctive relief boils down to a request that the Court apply the "controversial and disfavored theory" of "inevitable disclosure," and argues that the Court should decline to adopt this doctrine because "[n]o Washington appellate decision has ever endorsed" it and as California courts have firmly rejected it (consistent with their general rejection of post-employment restrictions). Opp. at 6, 19-22. He is wrong on all fronts. Amazon's Motion is primarily based on its request that the Court enforce the clear noncompete restrictions in the Noncompetition Agreement. However, the inevitable disclosure doctrine does provide an additional reason why the Court can and should prevent Powers from working in Google's cloud computing business for the 18-month period set forth in the Noncompetition Agreement. Contrary to Powers'

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 2

DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 1. The Noncompetition Agreement Restricts Powers from Competing with Amazon's Cloud Computing Business.

In arguing that the Noncompetition Agreement does not prevent him from working for Google's cloud computing business, Powers mischaracterizes the terms of the agreement and ignores language that is inconsistent with his interpretation. Among other things, he fails to mention that Section 2(b) of the Noncompetition Agreement not only prohibits— Powers from disclosing Amazon's confidential information, but also from "directly or indirectly…us[ing] or causing to be used any such Confidential Information in connection with any activity or business except the business of [Amazon]." Selipsky Decl., Ex. B. Similarly, the restrictions in Sections 3(c)(ii)-(iv) of the Noncompetition Agreement—which Powers mischaracterizes as mere "customer nonsolicitation clauses"—not only prohibit Powers from soliciting customers, but also prevent him directly or indirectly (including through Google) from servicing the same customer base as Amazon (which competes directly with Google to serve the same cloud computing customer base, *see* Selipsky Decl. ¶¶ 22-31).

Recognizing the broader nature of the prohibition in Section 3(c)(iii) of the Noncompetition Agreement, which expressly precludes him from

> directly or indirectly…accept[ing] or solicit[ing] business from any retail market sector, segment, or group that [Amazon] has solicited, targeted, or accepted business from prior to [the termination of his Amazon employment]…or has actively planned…to solicit, target or accept business from…[,]

Powers argues that this limitation does not apply to him because Amazon's cloud computing products and services are supposedly sold in the "enterprise" markets rather than a "retail" market. Powers' proposed distinction between retail and enterprise markets finds no support in

---

claim, the Washington Court of Appeals has adopted the inevitable disclosure doctrine in at least one unreported decision, *see Solutec Corp., Inc. v. Agnew*, No. 16105-6-III, 1997 WL 794496, at *8 (Wn. App. Dec. 30, 1997) (granting injunction where employee left to form a business competitive with his former employer and "there existed a high degree of probability of inevitable and immediate use of [employer's] trade secrets"), and courts across the country have applied that doctrine to enforce non-competition agreements in recent years. *See, e.g., Harlan Labs, Inc. v. Campbell*, __ F. Supp. 2d __, 2012 WL 5285127, at *8 (D. Mass. Oct. 25, 2012); *Oce N. A., Inc. v. Brazeau*, No. 09 C 2381, 2010 WL 5033310, at *7 (N.D. Ill. Mar. 18, 2010); *Minn. Mining & Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002). Thus, this Court can properly use the inevitable disclosure doctrine as a basis to enforce restrictions on Powers.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 3
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

either the Noncompetition Agreement or Washington case law. The term "retail" in Section 3(c)(iii) denotes *sales to end users*—including businesses and other corporate enterprises—as opposed to *wholesale* transactions, the *exact distinction* that courts in Washington and the Ninth Circuit have drawn when defining "retail" in various contexts. *See Peru v. Sharpshooter Spectrum Venture LLC*, 493 F.3d 1058, 1063 (9th Cir. 2007) (recognizing that "sales activity directed at ultimate purchasers ('consumers') is retail, as opposed to wholesale sales activity directed at purchasers who will further process, distribute, or resell the items," based on Black's Law Dictionary definition of retail as "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing"); *Brittingham Leasing Corp. v. Szymanski*, 53 Wn. App. 251, 256 (1989) (defining a retail purchaser as "the buyer who is the final user of the goods, as distinguished from a middleman or a purchaser who plays a wholesaler role"); *see also Center v. Wright*, No. 94-2-03449-2, 1997 WL 273636, at *3 (Wn. App. May 23, 1997) ("We agree with the *Brittingham* Court that a 'retail purchaser' is the final user of the goods and the statute was created to protect this class of claimants."). Indeed, even the *Buhr* case—which Powers misleadingly cites in support of his retail/enterprise distinction (Opp. at 13)—discussed the term "retail" in Section 3(c)(iii) by comparing it to wholesale, not enterprise, transactions. *See* Petrak Decl., Ex. C, at 15:22-16:1.[2]

Amazon and Powers knew from the start that Powers' responsibilities were in cloud computing, not Amazon's business of selling physical goods over the internet. It would have made no sense to require Powers to agree that he would not compete in that business, while at the same time permitting him freely to leave and compete in the cloud computing business for which he was hired. It is not remotely plausible that Powers so understood the agreement.

---

[2] The Commissioner in *Buhr* pointed out that he made his decision following just "30 or 40 minutes of reviewing your papers and five minutes each, if that, of argument." *Id.* at 21:16-17. Nothing in the Commissioner's oral ruling or written order indicates he denied the TRO based on the retail/wholesale distinction, as opposed to the former employee's arguments that California would not enforce the injunction, that the relevant noncompetition agreement had been superceded, *see id.* at 17:14-20:9, or that, as Buhr argued, his new business did not compete with Amazon's cloud business. He expressly declined the invitation of Buhr's counsel to rule that the agreement was unenforceable, saying "I don't know that they don't have an agreement that's enforceable." *Id.* at 21:12-13.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 4
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

There is nothing ambiguous about the inclusion of the term "retail" in Section 3(c)(iii) of the Noncompetition Agreement or its effect of prohibiting Powers from working in Google's cloud computing business, which competes directly with Amazon's cloud computing business to sell cloud products and services to end-user (*i.e.,* "retail") customers. *See* Selipsky Decl. ¶¶ 5, 24.

### 2. The Restrictions Amazon Seeks are Reasonable Limitations that Would Impose Necessary Restraints on Powers.

The agreed restrictions that Amazon seeks to enforce are reasonable. Amazon does not contend that Powers may not work for Google, even though in some areas Google and Amazon are competitors. In fact, in the restrictions to which Amazon, Powers and Google agreed pending the outcome of this motion, all parties agreed that Powers could work for Google, but in areas—and at Google there are many such areas—in which Google does not complete with the AWS cloud computing business. *See* Leavens Decl. ¶ 11 & Ex. I. In addition, Amazon paid Powers $325,000 to ease any transition difficulties. Amazon seeks only to prevent Powers from competing in the cloud computing business for 18 months, to have no business dealings with customers he dealt with at Amazon for the same period, to keep confidential and not use confidential information for any purpose, and to avoid trying to recruit away Amazon employees for 12 months. *See* Prop. Ord., § III. In light of his position as head of worldwide sales and business development for AWS, and his extremely broad access to Amazon's trade secrets and confidential information, these restrictions are reasonable, and indeed minimal.

Powers nonetheless argues that the as-written limitations are overbroad. Opp. at 14-15. In particular, Powers focuses his concerns on limitations on his ability to solicit and do business with Amazon customers with whom he had no interaction or about whom he received no confidential information while he was at Amazon, despite the fact that Amazon is ***not asking this Court to prevent him*** from soliciting or doing business with those customers (except, of course, in the cloud computing field). Washington courts, however, hold that the trial court should focus its reasonableness analysis on the limitations it is asked to enforce, rather than on the broadest possible interpretation of the noncompetition agreement. *See Knight, Vale &*

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 5
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Gregory v. McDaniel*, 37 Wn. App. 366, 370-71 n.1 (1984).  In any event, Powers' argument that the Noncompetition Agreement is unreasonably broad fails, for several reasons.

***First***, in arguing that "[t]he only proper use of a post-employment restraint is to prevent, for a time, the competitive use of information or relationships that are unique to the former employer," Opp. at 14, Powers contradicts settled Washington law recognizing that non-competition agreements and other post-employment restrictions are enforceable.  *See, e.g.*, *Perry v. Moran*, 109 Wn.2d 691, 698-701 (1987), *modified on other grounds*, 111 Wn.2d 885 (1989).[3]  Powers' overbreadth argument principally relies on the *Labriola v. Pollard Group, Inc.* concurring opinion, in which **no other justice joined**.  *See* 152 Wn.2d 828, 842-48 (2004).  Moreover, Justice Madsen's assertion in her concurrence that post-employment non-competition agreements are "never reasonable" under Washington law is, with all respect, not correct.  The concurrence relied for this proposition only on a ***dissenting*** opinion in an earlier Washington Supreme Court case, as well as several easily distinguishable Georgia cases that invalided non-competition agreements that prohibited employees from undertaking ***any*** kind of employment with ***any*** competitive business whatsoever—a situation not present here.  *See id.* at 847-48 & n.7 (citing *Ekman v. United Film Serv., Inc.*, 53 Wn.2d 652, 657 (1959); *Howard Schultz & Assocs. of the SE, Inc. v. Broniec*, 239 Ga. 181, 184, 236 S.E.2d 265 (1977); *Federated Mut. Ins. Co. v. Whitaker*, 232 Ga. 811, 209 S.E.2d 161 (1974); *Dixie Bearings, Inc. v. Walker*, 219 Ga. 353, 133 S.E.2d 338 (1963)).  Likewise, the ruling in *A Place for Mom, Inc. v. Leonhardt*, No. C06-457P, 2006 WL 226337 (W.D. Wash. Aug. 4, 2006) which Powers cites (Opp. at 15), relies heavily on Judge Madsen's *Labriola* concurrence, and in any event, involved an unusual middle-man business model that raised significant questions about the enforceability of a non-compete (and which is quite unlike the situation here).

---

[3] Indeed, while Powers cites *Perry* for this supposed principle, the language actually comes from an article cited in *Perry*, which the Court quoted in its discussion of various alternative restrictions that the employer in the case could have chosen to adopt, but did not.  *See* 109 Wn.2d at 702.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 6
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Second*, this Court has previously granted Amazon injunctive relief enforcing the noncompetition restrictions in the very Noncompetition Agreement at issue in this case. In *Amazon v. Zyda et al.*, Case No. 01-1448, Judge Rothstein granted Amazon a temporary restraining order prohibiting a former VP and financial officer from commencing *any* employment or doing *any* work for eBay after leaving Amazon. *See* Leavens Decl., Ex. J. The far more limited restrictions Amazon seeks here—preventing Powers from working for Google's cloud computing business, which competes directly with Amazon—should therefore not be viewed as overbroad.

*Third*, despite Powers' attempt to question the scope and duration of the restrictions in Section 3(c) (Opp. at 14-15), Washington courts have repeatedly enforced broader and longer post-employment restrictions. *See* Mot. at 15-16 (citing cases); *Perry*, 109 Wn.2d at 707 (Utter, J., dissenting) (noting that restriction approved by majority "extends to all clients serviced by the various PWT departments" rather than the "limited number of…clients" the former employee had worked with).

*Finally*, the Court should reject Powers' invitation to refuse to consider enforcing the narrower limitations that Amazon has sought and to refrain from exercising its well-established power to reform any overbroad restrictions. Opp. at 15-17. Washington law encourages parties to seek more limited restrictions than their as-written contracts allow, and freely permits courts to reform overbroad contractual limitations. *See Knight*, 37 Wn. App. at 370-71; *Wood v. May*, 73 Wn.2d 307, 309-10 (1968). Indeed, the Noncompetition Agreement itself expressly provides for reformation of any restrictions a court finds unreasonable, reducing any supposed *in terrorem* effect of the as-written restrictions. *See* Selipsky Decl., Ex. B, § 4(b); Opp. at 16. The other rationales Powers offers for his request are unconvincing: a speculative and wishful suggestion that the Washington Supreme Court will change its reformation approach in light of the *Labriola* concurrence, numerous quotations from cases and scholars in different jurisdictions that follow different rules about why they do not agree with the reformation

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 7
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

approach, and citations to several Illinois cases that refused to reform unduly broad contractual limitations. Opp. at 15-17. Even if these authorities were persuasive (they are not), the role of this Court sitting in diversity is to apply current Washington law.

### 3. Washington, Not California, Law Controls.

Washington law governs this dispute. The Noncompetition Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of Washington." Selipsky Decl., Ex. B § 9. Washington courts enforce such choice of law clauses in order to uphold the "justifiable expectations" of "a freely negotiated contract between two highly experienced and successful business people who defined in advance the terms of their business relationship and explicitly chose Washington law to govern any disputes." *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 699 (2007); *see also Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 828 (1994) (noting that "[t]here is a beneficial effect to society when contractual agreements are enforced and expectancy interests are not frustrated").

Judge Bryan of this District only recently enforced a Washington choice of law clause in a noncompetition agreement, even though the former employees had signed the agreements in California, lived in California during their tenure with the Washington based company, and had minimal contacts with the employer's principal place of business in Washington. *See CH2O, Inc. v. Bernier*, No. C11-5153RJB, 2011 WL 1485604, at *2, 8-9 (W.D. Wash. Apr. 18, 2011). Relying upon the RESTATEMENT (SECOND) CONFLICT OF LAWS § 187, Judge Bryan held that "Washington has a strong interest in upholding the justified expectations of the parties to a contract as to their selected governing law," and specifically rejected the employees' contention that "California's interests materially outweigh those of Washington." *Id.* at *9; *see also Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1103-05 (S.D. Cal. 2006) (dismissing action for declaratory relief to avoid noncompetition agreement in California where agreement contained Washington choice of law and forum selection clauses and employer had filed

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 8
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

enforcement action in Washington and noting ruling by King County Superior Court that Washington law applied, rejecting employee's argument that California law applied).

Here, the case for enforcing the Washington forum selection clause is even more compelling.  Powers accepted employment with a Washington-based company, and moved to Seattle and lived here during his employment with Amazon, moving to California only in September 2012 after accepting employment with Google.  *See* Selipsky Decl. ¶ 7; Powers Decl. ¶ 18.  Google is an international company.  Powers cannot plausibly contend that California has a "materially greater interest" than Washington in the outcome of this matter.[4]

**B.     Amazon is Likely to Succeed on Its Trade Secret Claim.**

Contrary to Powers' assertion that it failed to identify "with sufficient particularity" the Amazon confidential information that qualifies as trade secrets, Amazon has extensively detailed those exact trade secrets.  During his employment, Powers learned and helped to develop Amazon's cloud business strategies, including what products Amazon intends to introduce, to whom Amazon intends to market those products, how Amazon intends to price those products, and what geographic markets into which Amazon intends to expand.  *See* Selipsky Decl. ¶¶ 9-17.  Additionally, Powers had access to all of the financial details of Amazon's cloud business, including its total sales volume, costs, its overall margins, its product-by-product margins, and its customer-by-customer margins.  *See id.* ¶ 14.  Amazon takes significant steps to maintain the confidentiality of this information, including requiring employees—like Powers—to sign confidentiality agreements, establishing internal procedures governing how confidential information is handled, and restricting access to certain of its

---

[4] Defendant's reliance on *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 72 Cal. Rptr. 2d 73 (1998) for the proposition that California has an "overriding" interest in preventing enforcement of noncompetition agreements is misplaced.  Because this Court has jurisdiction over this matter by virtue of diversity of citizenship, it applies the choice of law rules of Washington State.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  The Court in *Application Group* necessarily applied the choice of law rules of California, which are inapplicable here.  *See CH2O*, 2011 WL 1485604, at *9 (distinguishing California case refusing to enforce non-competition agreement "because the district court presiding over that case sat in California and therefore applied the choice of law rules of California.  This court, sitting in Washington, applies the choice of law rules of Washington to this matter.").

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 9
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

systems and facilities. *See id.* ¶ 18-19. This more than satisfies the showings necessary to establish protectable trade secrets: information that (1) derives independent economic value from not being generally known to, or readily ascertainable by, the public, and (2) is subject to reasonable efforts to maintain its secrecy. *See* RCW 19.108.010(4); *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 438-39 (1999) (customer lists may be trade secrets); *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F. Supp. 2d 1257, 1267 (E.D. Wash. 2010) ("confidential information about Plaintiffs' business" are trade secrets); *Stoncor Grp., Inc. v. Campton*, No. C05-1225JLR, 2005 WL 2030832, at *4 (W.D. Wash. Aug. 22, 2005) ("customer files, the pricing information contained in them…likely qualify as trade secrets"); *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1200-01 (E.D. Wash. 2003) ("customer project information, purchasing history, detailed information about customer's needs, technical project details, and the identities of individual contact people" qualify as trade secrets).

Amazon has also established the likelihood of misappropriation of these trade secrets in the event that Powers is not enjoined from assuming cloud computing responsibilities for Google. In Washington, courts may enjoin an "[a]ctual or threatened misappropriation" of a trade secret. RCW 19.108.020(1); *see also Solutec Corp.*, 1997 WL 794496, at *8 (granting injunction where employee left to form a business competitive with his former employer and "there existed a high degree of probability of inevitable and immediate use of [employer's] trade secrets"). Given that Powers intends to assume substantially the same role at Google involving cloud computing products that he held with Amazon, and would sell competing products to the same customer base, at a minimum, there is a clear threat that he will misappropriate Amazon's trade secrets. Accordingly, Amazon has established a likelihood of success on the merits of its claim for misappropriation of trade secrets.

### C.   Amazon Has Demonstrated a Likelihood of Irreparable Harm.

Amazon has demonstrated that it is likely to suffer irreparable harm because Powers, if permitted to do so, would assume substantially the same cloud computing position at Google he

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 10
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

held with Amazon, and there is a clear danger he will disclose and use Amazon's confidential information and trade secrets in his new job. Powers' contention that controlling case law forecloses Amazon's arguments misconstrues the authorities that he cites, and ignores abundant case law holding that, when there is clear danger a person could disclose confidential information and trade secrets of his former employer, irreparable harm is especially likely.

The primary authorities upon which Powers relies have nothing to say about the sufficiency of Amazon's showing of irreparable injury here. In *eBay Inc. v. MercExchange LLC*, 547 U.S. 388 (2006), the Supreme Court overruled a Federal Circuit ruling that a permanent—not preliminary—injunction must follow as a "general rule" once a plaintiff has established patent infringement. *Id.* at 393-94. In other words, the Supreme Court merely decided that courts must apply the traditional four-factor test in determining whether to issue a permanent injunction.[5] Powers' reliance on *Winter*—a case that involved antisubmarine sonar testing and alleged harm to marine mammals, not confidential information or trade secrets—is also misplaced. In *Winter* Court merely held that, to demonstrate the likelihood of irreparable harm in such circumstances, the plaintiff had to show that injury to marine mammals was a more than a mere "possibility," 555 U.S. at 22, which says nothing about the showing an employer must make to demonstrate that irreparable harm is likely when a former employee violates a noncompetition agreement by assuming employment with a competitor or misappropriates trade secrets or confidential information. And in *Calence, LLC v. Dimension Data Holdings, PLC*, 222 Fed. App'x 563 (2007), the Ninth Circuit merely held that it was not reversible error for the District Court to decline to presume irreparable harm based on an alleged misappropriation of trade secrets.[6]

---

[5] It is also worth noting that a party seeking a preliminary injunction need only show that it is ***likely*** to suffer irreparable harm in the event of a breach, not that it already has done so. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[6] Powers' other two cited cases, *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) and *Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153 (W.D. Wash. 2011), are wholly inapposite. Both involved the specific showings of irreparable harm necessary in the copyright and trademark context, and say nothing about non-competition agreements or misappropriation of trade secrets or confidential information.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 11

DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Contrary to Powers' suggestion, Amazon has not asked this Court simply to presume irreparable harm, but has provided evidence that Powers possesses confidential information and trade secrets relating to Amazon's cloud computing business, and has argued that because Powers has assumed substantially the same cloud computing role at Google as he held at Amazon, irreparable harm from the disclosure of confidential information and trade secrets is likely. Numerous courts have stressed that the sensitive nature of confidential information and trade secrets makes disclosure of such information especially likely to cause irreparable harm. *See* Mot. at 17-18 (citing cases); *see also Beckman Instruments, Inc. v. Cincom Sys., Inc.*, 165 F.3d 914, 1998 WL 783774, at *2 (9th Cir. Nov. 10, 1998) ("Once a trade secret is…lost, it is lost forever. The harm is irreparable."); *U.S. v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988) (access to "confidential information" that could be accessed absent preliminary injunction "poses a legitimate threat of immediate, irreparable injury"); *U.S. Water Servs., Inc. v. Itoh*, No. C11-5144BHS, 2011 WL 834167, at *2 (W.D. Wash. Mar. 3, 2011) (granting TRO against former employee who had access to "trade secrets and confidential information" and whose "use of the trade secrets will likely cause irreparable harm"). Thus, Amazon has met its burden of showing a likelihood of irreparable harm from Powers' use or disclosure of its information.

**D.    The Balance of Equities and Public Interest Tip in Favor of Amazon.**

In its opening papers, Amazon established that both the balance of equities and public interest considerations favor entry of an injunction. Mot. at 19-20. Powers' conclusory statements on these factors do not rebut Amazon's showing. Opp. at 24.

**IV.    CONCLUSION**

For the foregoing reasons, Amazon respectfully requests entry of an Order in the form submitted in support of its Motion, barring Powers until trial in this action from working in any cloud computing role at Google, communicating with any Amazon cloud computing active or prospective customer, or soliciting any current Amazon employee to join Google.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 12
DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1     DATED this 30th day of November, 2012.

2

3                                   Davis Wright Tremaine LLP
                                  Attorneys for Amazon.com, Inc.

4                                   By */s/ Ladd B. Leavens*
                                      Ladd B. Leavens, WSBA #11501

5                                       Jonathan M. Lloyd, WSBA #37413

6                                       1201 Third Avenue, Suite 2200
                                      Seattle, WA  98101-3045

7                                       Telephone:  206-622-3150
                                      Facsimile:  206-757-7700

8                                       E-mail:  laddleavens@dwt.com
                                      E-mail:  jonathanlloyd@dwt.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 13

DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

PROOF OF SERVICE

I hereby certify that on the date below indicated, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

kpetrak@byrneskeller.com

DATED this 30th day of November, 2012.

        Davis Wright Tremaine LLP
        Attorneys for Plaintiff


By */s/ Ladd B. Leavens*
    Ladd B. Leavens, WSBA #11501
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: laddleavens@dwt.com

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION (2:12-cv-01911-RAJ) - 14

DWT 20708417v7 0051461-000280

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700